# CHARLES SCHEURER, Appellant, v. BANNER RUBBER COMPANY.

### Division Two, March 31, 1910.

1. **NEGLIGENCE: Emergency Brake: Use Before Injury: No Evidence.** Where plaintiff, in attempting as his duty required, to put sheets of rubber between the two large rollers of the machine at which he was at work, got the fingers of one hand caught, and thereupon seized the emergency brake, which was out of repair and refused to work, in consequence of which his entire arm was drawn in and crushed, the instruction should not make his recovery depend upon his use of the brake "before he received any injury" to his fingers, especially where there is absolutely no evidence to show that at the time he used the emergency brake his fingers had been injured.

2. ———: ———: ———: ———: Aggravated Injury: Assumption of Risks. Likewise, where plaintiff at work at a machine got his fingers caught between its heavy rollers through which he was feeding sheets of rubber, and thereupon seized the emergency brake, which refused to stop the rollers, in consequence of which his arm was drawn in between them, an instruction on assumption of risks should not tell the jury that "if plaintiff sustained any injury by reason of getting his fingers so caught, and would have so sustained injury even if the safety brake had worked perfectly, then plaintiff is not entitled to recover, even though you may further find that the injury he received was aggravated by the fact that the safety brake did not stop the rollers as quickly as it was intended to do." The evidence being that the safety brake did not work at all, the words "as quickly as it was intended to do" should not have been used. Neither should the instruction have assumed that his fingers were injured before he used said brake, there being no evidence to establish that fact. But the real error of the instruction is that it in effect declares plaintiff assumed the risk attendant upon the failure of the safety brake to work, there being no evidence that he knew it was out of order, and the defendant's testimony being that had it worked properly the rollers would have stopped almost immediately.

3. ———: Assumption of Risk: Aggravated Injury: Apportionment. It is not the law that where the servant got his fingers between the rollers of the machine into which it was his duty to feed sheets of rubber, and suffered an injury in so doing, through his own negligence, and if the injury was increased by reason of a defect in the device for stopping the rollers, the defect being due to the master's negligence, there can be no apportionment of the damages, such defect not having caused the injury in the first place. The law in such cases is that where the servant sustains injuries from separate and independent causes, although the injuries may be concurrent in point of time, it is the duty of the triers of fact to separate, as best they can from the evidence before them, the amount of damages caused by the master's negligence; and the difficulty of separating that amount cannot be allowed to stand in the way of recovering some damage.

4. ———: Prima-Facie: Inference. Where the safety brake, constructed for the express purpose of stopping the machine when "some one is caught in the machinery," was seized by the plaintiff as soon as his fingers went between the rollers, and it failed to work, and thereafter his arm was drawn in and crushed, there is made out a prima-facie case from which it may be reasonably inferred that the defendant's negligence in providing a defective safety brake, caused the accident.

5. ———: **Safety of Machinery: Inspection: Frequency.** A safety brake having been installed for the express purpose of protecting the employees working at the heavy and dangerous machinery, and the rules prohibiting the servant from inspecting it, inspections by the foreman at intervals of two or three weeks, when an inspection to determine whether or not it was out of repair was simple and could have been quickly performed, were not as frequent as reasonably necessary.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

REVERSED AND REMANDED.

*Kinealy & Kinealy* for appellant.

The action of the court, in giving at defendant's request instruction 6 and in modifying plaintiff's instruction 1 was erroneous because: (a) The existence of a duty and its violation followed by injury gives a right of action. Longan v. Weltmer, 180 Mo. 322; Graney v. Railroad, 140 Mo. 90; Blair v. Railroad, 89 Mo. 334; Atkinson v. Railroad, 90 Mo. App. 489; Wheeler v. St. Joseph Co., 66 Mo. App. 260. (b) Uncertainty or difficulty in determining amount of damage does not justify denial of recovery. 8 Am. and Eng. Ency. Law (2 Ed.), 614; Railroad v. Cushney, 95 Tex. 309; The Victory, 15 C. C. A. 495; Reno's Emp. Liab. Acts, p. 351; Gould v. McKenna, 86 Pa. St. 297; Railroad v. Richards, 57 Pa. St. 142; Seeley v. Allen, 61 Pa. St. 302; Weitzman v. Nassau, 53 N. Y. Supp. 905; Raasch v. Laundry Co., 98 Minn. 357; Jackson v. Railroad, 114 La. 982; Basham v. Hammond Co., 107 Mo. App. 542; Owens v. Railroad, 95 Mo. 169; Webb v. Railroad, 89 Mo. App. 604; Glasgow v. Railroad, 191 Mo. 347; Russell v. Columbia, 74 Mo. 480; Sanderson v. Holland, 39 Mo. App. 233.

*Wm. R. Gentry* and *Watts, Williams & Dines* for respondent; *Stern & Haberman* of counsel.

(1)   The plaintiff having failed to prove any negligence on the part of the master, a verdict in his favor could not have been upheld. Hence a new trial should not be awarded plaintiff, even if technical error can be found in the instructions.   Mockowik v. Railroad, 196 Mo. 550; Bradley v. Forbes Co., 213 Mo. 320; Moore v. Railroad, 176 Mo. 528; Wagner v. Edison Co., 177 Mo. 44; Lomax v. Railroad, 119 Mo. 192.   His sole ground of complaint is that owing to the danger necessarily incident to getting caught between the rollers on the machine where he worked, a safety device had been installed by the defendant to stop the machine quickly in cases of great emergency, and that by reason of defendant's negligence that emergency appliance was allowed to become out of repair so that it did not work when an emergency arose.   The doctrine of *res ipsa loquitur* does not apply.   Negligence must be alleged and must be proved as alleged before the plaintiff's case can be submitted to the jury.   Beebe v. Railroad, 206 Mo. 421; Glasscock v. Dry Goods Co., 106 Mo. App. 651; Hester v. Packing Co., 84 Mo. App. 454; Breen v. Cooperage Co., 50 Mo. App. 202.   In such a case as this the plaintiff, in order to have his case submitted to the jury, must show not only that the appliance was defective and that the defect caused plaintiff to be injured, but he must go further and show either that the master had actual knowledge of the defect a sufficient length of time to have enabled him, by the exercise of ordinary care, to repair the defect, or that if the master had exercised ordinary care in inspecting and looking after the appliance, he would have discovered the defect in time to repair it before the accident. Wojtylak v. Coal Co., 188 Mo. 281; Kelly v. Railroad, 105 Mo. App. 365; Kramper v. Brewing Assn., 59 Mo. App. 277; Pavey v. Railroad, 55 Mo. App. 218; Herbert v. Shoe Co., 90 Mo. App. 305; Seabord Mfg. Co. v.

Woodson, 94 Ala. 147; Wilson v. Railroad, 85 Ala. 273; Railroad v. Holborn, 84 Ala. 133; Railroad v. Flannigan, 77 Ill. 365; Rolling Stock Co. v. Wier, 96 Ala. 396; Burke v. Rubber Co., 21 R. I. 446. (2) The action of the court in amending plaintiff's first instruction and in giving instruction 6 at the instance of the defendant does not constitute reversible error. The theory of those instructions is simply that the jury should not attempt to guess or speculate as to how much injury would have been caused to the plaintiff if when his fingers were caught the safety appliance worked properly and stopped the machine, and how much injury was caused as the result of the alleged negligence of defendant in so managing its safety brake that it did not work. This is in accord with the decisions of courts of high authority. Gordon v. Reynolds, 42 Hun 278; Hicke v. Taafe, 105 N. Y. 26; Cagney v. Railroad, 69 Mo. 416.

BURGESS, J.—This is an appeal from a judgment of the circuit court of the city of St. Louis in favor of the defendant, in a suit for damages for personal injuries.

At the time he received his injuries, plaintiff was in the employ of the defendant and was operating a machine known as a shaping machine, used for working over old rubber stock or the remains of rubber sheets out of which rubber shoe heels had been stamped. The sheet of rubber was first warmed up by passing it through a machine with heated rollers, and after being thus warmed and softened it was passed through the shaping machine. The warming machine and the shaping machine were substantially similar, the difference being that in the warming machine the rollers were heated. The machines consisted of two horizontal metal rollers, about three and one-half or four feet long and two feet in diameter, which were caused to roll towards each other, the space between

them at the nearest point of approach being about an inch and a half. The rollers stood about three feet from the floor, and the operator of the machine caused the rubber sheet to pass between them from the top, and after passing through and down, the operator reached under the roller, took hold of the projecting end of the sheet of rubber, pulled it up and around the roller nearest him, and then with his left hand pushed the middle of the sheet down between the rollers just far enough to allow the rollers to grip the sheet which, by the motion of the rollers, is doubled up and passed through as before. This operation was repeated until the rubber stock was thoroughly worked, and in proper condition for use. There were several of these machines set in a row in the room where plaintiff was working, and at the time of the injury a number of other employees of the company were at work in said room. The rollers on these machines were caused to revolve by a cog wheel connection with the line shaft beneath the floor and under the row of machines. An engine was in the room adjoining this room, and the line shaft from which the machines received their power was connected with the main shaft of the engine by a clutch. When the jaws of this clutch were caused to open, the power of the main shaft of the engine was no longer communicated to the line shaft, and the machines would stop, although the engine might still be running. Plaintiff had been operating these machines in defendant's factory some four or five months prior to the injury. In the room, and in connection with the machines, was a safety device or appliance called an emergency brake, to be used in case of an accident or injury to an employee by being caught in the machinery. This emergency brake was operated by a horizontal wooden bar or lever, about two and one-half inches wide and one inch thick, located about six feet above the floor and over the machine. One of these bars or levers was placed over each

machine. By pulling down on said lever an electric switch was closed and a current of electricity caused to pass through an electric lock, a certain part in which lock was thus converted into a magnet, which caused a catch to be released, permitting a heavy weight to pull open the clutch on the line shaft, which line shaft was thus disconnected from the main shaft of the engine. By means of a second electric lock, operated by the same current which passed through the lock controlling the clutch, the steam was caused to be shut off from the engine. If both electric locks were in good order when the current was caused to flow by the act of pulling down on the safety lever over the machines, both locks would operate, and thereby not only would the clutch connecting the line shaft with the main shaft be caused to open, but the steam from the engine would also be shut off. If the emergency brake, as the appliance—including lever, current, wires and locks— was called, was in good order, the pulling down of the bar or lever over any of the machines would cause the machines to stop almost instantaneously, and the rollers would not thereafter revolve as much as three inches. Tacked on each side of the wooden lever over each machine was a sign reading: "Don't touch this rod unless some one is caught in the machinery or in case of severe accident. Then pull down hard on it, and the machinery will stop. Any one who pulls this rod, when it is not absolutely necessary, will be discharged."

On the afternoon of February 13, 1905, the plaintiff was passing a sheet of rubber, weighing about twenty pounds, between the rollers of his shaping machine. He had passed it through the machine once, and had reached down with his right hand under the machine and taken hold of the sheet as it came through, and had pulled it up and around the roller next to him. Then, with his right hand holding the top end of the

227 Sup—23

rubber sheet, and his left hand against the middle, he was pressing the rubber towards the space between the rollers, when, either because the flap slipped out of his right hand and struck his left elbow, or for some other reason, the fingers of his left hand got caught, with the rubber sheet, between the rollers. As soon as plaintiff felt his fingers caught he took hold of the emergency brake bar, which was over his machine, and pulled down on it, but it failed to operate, and he kept pulling until the bar broke. Another employee in the room, hearing him "hollow," and seeing his predicament, pulled down on the emergency brake bar over his machine, but that also failed to cause the machinery to stop. Thereupon the defendant's foreman, who had seen what had happened, ran into the engine room and told the engineer to turn the steam off, but by the time this was done, and the momentum of the engine had spent itself, the plaintiff's arm had been drawn between the rollers, its whole length, and the rollers had to be pried apart before he was released. As a result of this crushing of his arm, it was necessary that same night to amputate it at the shoulder socket.

Defendant's foreman testified that the emergency brake was tested about every two weeks, and that it was not tested for "fourteen days or three weeks before it broke." The plaintiff testified that as long as he had been working there he had never seen the foreman test the brake. About three days after the injury, and before any repair or change had been made in the electrical lock controlling the clutch, the foreman was shown it by the engineer, who had taken it down. He testified that there was a part of the electrical lock broken, which break effectually prevented the lock from operating, and prevented any current from passing through it.

The defendant offered no evidence, but at the close of plaintiff's case asked for an instruction in the nature

of a demurrer to the evidence, which was refused, and the defendant then announced that it rested.

Under the instructions of the court, the jury returned a verdict in favor of the defendant, and judgment was entered accordingly. Plaintiff duly filed his motion for a new trial, which was overruled, whereupon he appealed to this court.

Plaintiff contends that the judgment should be reversed and the cause remanded for new trial by reason of error in the giving of certain instructions. Instructions numbered 1 and 6 are particularly assailed. The former reads as follows:

"The court instructs the jury that if they believe from the evidence that plaintiff received the injuries testified to by him, and that at the time he received said injuries he was in the employ of defendant, and that in the performance of his duties as such employee he was then engaged in feeding a mass of soft rubber into and between two rollers revolving towards each other, and that said rollers were caused to so operate by means of a suitable arrangement of cog wheels working into a cog wheel upon a line shaft, which in turn was caused to operate by a clutch upon the main shaft of the engine, and that near said rollers and for the use of the person feeding said rubber through said rollers the defendant had placed a horizontal brake lever, which was part of an emergency brake consisting of said lever and an electric battery, wires, electric lock and a mechanical arrangement of springs, levers and weight, and that when said horizontal lever was pulled down it would, if all the said parts of said emergency brake were in good repair, cause said clutch to open and thereby cause said rollers to cease revolving, and if the jury further believe from the evidence that plaintiff while in the performance of his said duties got the fingers of his left hand caught between said rollers, and thereupon, *and before plaintiff received any injury thereby,* immediately pulled down said horizontal

brake lever, and that said emergency brake was out of repair in that one of the parts of said electric lock was broken, and that because of that fact the pulling down of said lever by plaintiff failed to cause said rollers to cease revolving, and that because of that fact, if you find it to be a fact, plaintiff's left arm was drawn into and between said rollers, and so badly crushed that plaintiff was compelled to, and did, have it amputated, and if the jury further believe from the evidence that defendant by the exercise of ordinary care would have known of such broken and out-of-repair condition of said emergency brake and electric lock, and that plaintiff at the time he received said injuries was exercising ordinary care in the performance of his duties, and for his own safety, then the jury will find in favor of the plaintiff.''

This instruction, excepting as to the words in italics, which were inserted by the court of its own motion, was asked by the plaintiff, and to the action of the court in modifying the instruction, and giving it to the jury as thus modified, the plaintiff excepted at the time and saved his exception.

The sixth instruction, complained of, is as follows:

''The court instructs the jury that plaintiff, by continuing in the employ of defendant and doing the work he was doing, assumed the risk of getting his fingers caught in between the rollers of the machine at which he was working; if therefore, you find from the evidence that plaintiff sustained any injury by reason of so getting his fingers caught, and that he would have so sustained injury even if the safety brake had worked perfectly, then plaintiff is not entitled to recover, even though you may further find from the evidence that the injury he received was aggravated by reason of the fact that the safety brake did not stop the rollers as quickly as it was intended to do.''

These two instructions, when read together and in connection with each other, in effect told the jury that

the plaintiff could not recover if, before using the emergency brake, which failed to operate, he sustained any injury by reason of getting his fingers caught between the rollers; and this although the jury might find that the plaintiff was at the time exercising ordinary care in the performance of his duty, and for his own safety, and that the defendant, by the exercise of ordinary care, would have known of the broken condition of the emergency brake.

Before considering the proposition whether the plaintiff was entitled to recover under the circumstances as stated, we shall first turn our attention to said instruction number 6, which is, we think, objectionable for more than one reason, and which almost amounts to a peremptory instruction to find for the defendant, as under it we do not see how the jury could return a verdict for the plaintiff.

In the first place, there is no evidence that the plaintiff did in fact sustain any injury before he used the emergency brake which was supposed to stop the machinery. The testimony simply is that plaintiff had his fingers caught between the rollers, but there is not a particle of evidence that his fingers were thereby crushed or injured, or that he received any injury of any kind, before he pulled down on the emergency bar or lever. The defendant's foreman testified that there was an inch and a half of space between the rollers, which was of course sufficient to allow the fingers of any ordinary man to go through without danger of injury to his fingers. However, at the time plaintiff's fingers were caught, he was pushing a sheet of rubber, in a folded condition, between the rollers, so that his fingers were pressed between the rubber, which was in turn, and at the same time, pressed by and between the rollers. This rubber, as the testimony shows, was soft, and there is no testimony, expert or otherwise, to show whether, if only his fingers had been caught, plaintiff would have sustained any injury. Perhaps

the rubber was so soft and yielding that the pressure was not sufficient to crush or injure his fingers. This we do not know, there being no evidence in that regard. As the evidence does not show that the plaintiff received any injury prior to the time he pulled down on the emergency bar, there was nothing upon which to predicate that part of the instruction which asks the jury to find whether there was such injury, and the instruction is in that respect erroneous. The instruction is also faulty in that it tells the jury that the plaintiff "is not entitled to recover, even though you may further find from the evidence that the *injury he received* was aggravated by reason of the fact that the safety brake did not stop the rollers *as quickly as it was intended to do.*" This not only assumes that plaintiff received injury before he used said safety brake, but also assumes that the safety brake did stop the rollers, although not "as quickly as it was intended to do." The evidence is that the safety or emergency brake did not operate at all, and had nothing to do with stopping the rollers, that only having been accomplished by "shutting down the engine," as the foreman expressed it. It is unnecessary to add that an instruction must have evidence to support it.

While admitting that plaintiff assumed the risk of getting his fingers caught between the rollers of the machine about which he was working, and the ordinary risks incidental to his employment, it cannot be said that he assumed the risk attendant upon the failure of his safety brake to operate, and which was placed there to diminish his risk. The defendant having set up this safety appliance for the purpose of diminishing risk, and the fact being so known to the plaintiff, there was an implied obligation on the defendant not to aggravate the plaintiff's risk by omission to keep the appliance in condition to operate and do what it was intended and expected to do. By printed notice attached to the brake bar the plaintiff was informed that by

Scheurer v. Rubber Co.

pulling down on said bar "the machinery will stop," and he had a right to rely upon the provision made for his safety. If he knew that the appliance was out of order, and still continued to work at and about his machine, it might well be argued that he accepted the increased risk, but the fact is that he did not know it before he received the injury. Defendant's engineer, who installed the apparatus called the emergency brake, testified that if it worked properly "the machine would stop immediately, and the circumference of the rollers would not go three inches after the clutch was disconnected;" so that if the emergency brake was in condition, the plaintiff's fingers, or at most his hand, could have been caught or crushed. That would have been the utmost extent of his loss, even supposing that the space between the rollers was so narrow that his fingers or hand must necessarily be crushed if caught between the rollers.

The theory, we understand, upon which the court gave instruction numbered 6 and instruction numbered 1, as modified, to the jury, was that there could be no apportionment of the damages; that is to say, if the plaintiff got his hand into the machinery and suffered an injury by so doing, through his own negligence, and if the injury was increased by reason of the defect in the device for stopping the machinery, there could be no apportionment of the damages, such defect in the safety device not having caused the injury in the first place. The law is that in cases where a plaintiff sustains damages from separate and independent sources, it is the duty of the triers of the facts, although the injuries may be concurrent in point of time, to separate, as best they can from the evidence before them, the amount of damages caused by the defendant's act or negligence; and the difficulty of determining the amount of damages caused by the defendant's negligence, or of separating it from the damage caused by

the act of some other party, has never been allowed to stand in the way of a recovery of some damage.

In Jenkins v. Pennsylvania Railroad Co., 67 N. J. Law, 331, it is held that "in an action of tort, where it is impossible to distinguish between the damage arising from the actionable injuries and the damage which has another origin, the jury should be left to make, from the evidence, the best estimate in their power, and award compensatory, damages for the actionable injury."

In Gilbert v. Kennedy, 22 Mich. 117, it is said: "Damages will not be denied because their nature is such that they cannot be accurately measured. If they cannot be measured by a fixed rule, all facts and circumstances tending to show what they are should be submitted to the jury."

In Occidental Consol. Min. Co. v. Comstock Tunnel Co., 125 Fed. 244, the court said: "While the plaintiff could not recover remote or speculative damages, based solely on conjecture, it is not deprived from recovering such general damages as are shown by the testimony to have been necessarily occasioned as a result of the breach, although the amount may not be made so absolutely clear and certain as to be easy of computation."

In Weitzman v. Nassau E. Co., 53 N. Y. Sup. 905, a child struck by an electric car was thrown upon the fender and carried a distance of thirty-two to one hundred and fifty feet, where he rolled off, and was killed by being crushed under the wheels. It was held that, irrespective of whether the child was guilty of contributory negligence in the first instance, yet when he was thrown into and upon the fender, of which the employees of the company had knowledge, the company became liable *for any further injury* which could have been prevented by the exercise of "reasonable care," the question as to the existence of which should have been submitted to the jury.

In Gould v. McKenna, 86 Pa. St. 297, the defendant's roof sloped towards and ran into the outside wall of plaintiff's building. Defendant's roof was covered with tin, and where the roof joined with plaintiff's wall this tin covering was turned up and carried along plaintiff's wall for a height of about a foot, thus forming a sort of apron for the protection of the wall for that distance above the roof. A hard rain came, and the water rising above the apron percolated through and down along the inside of the wall, damaging plaintiff's goods. Some of the water also came from the rain beating against the unprotected portion of the wall above the apron. The court held that the damages should be apportioned, saying: "But for the water falling through the wall above, and not brought down by the defendant's roof, the plaintiff alone was answerable, for the defendant had no part in causing it to flow there. Each cause of the injury was independent of the other. Hence the instruction was proper to allow no damages for the water running into the store through the wall above, provided the apron or flushing was sufficient. True, it is difficult to apportion the damages arising from the insufficiency of the apron; but this cannot exempt the defendant from a positive injury done by casting the flowage of his roof into his neighbor's store. The rain that fell through the wall above a sufficient apron or barrier did not contribute to produce this injury, though it did add to the damage sustained by the plaintiff's goods. Hence it was the duty of the jury to apportion the loss according to the actual injury of the defendant, by separating it, as well as they could, upon the evidence, from the loss arising from the openness of the wall above a sufficient apron. . . . The difficulty of separating the damage from each independent cause may be great, but it does not change the nature of the tortious act of the defendant or relieve him from liability." The doctrine here announced as to the separation or apportionment of dam-

ages finds support in Little Schuylkill Nav. Co. v. Richards, 57 Pa. St. 142; Seely v. Alden, 61 Pa. St. 302; Bradford v. Downs, 126 Pa. St. 622; Jackson v. Railroad, 114 La. 982; Raasch v. Elite Laundry Co., 98 Minn. 357; Russell v. Tomlinson, 2 Conn. 206; Adams v. Hall, 2 Vt. 9; Partenheimer v. Van Order, 20 Barb. 479, and many other cases.

It should be borne in mind that if the plaintiff in this case sustained injury by reason of the one fact that he got his fingers caught between the rollers of the machine, he would have no case, as he assumed that risk as one of the ordinary risks of his employment; but the action is for injuries to the plaintiff's arm, which necessitated its amputation, and which injuries the petition charges "were directly caused by the negligence of defendant in permitting said emergency brake to become defective and out of repair." The evidence we think clearly shows that the injuries complained of were the direct result of the failure of the emergency brake to stop the machinery, and not the direct result of plaintiff's getting his fingers caught in the machinery, although the said injuries would not have occurred if his fingers had not been so caught.

In O'Brien v. McGlinchy, 68 Me. 557, it is said in an opinion by PETERS, J.: "But where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, *if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant.*" So also in the case of Fickett v. Fibre Co., 91 Me. 268, it is held that, to defeat a recovery, the contributory negligence of the injured party must have contributed as a proximate cause of the injury. "If it operated as a remote cause, or afforded only an opportunity or occasion for the injury, or a mere condition of it, it is no bar to the plaintiff's action." But

we need not go beyond our own State for decisions supporting the doctrine above announced. See Lore v. American Mfg. Co., 160 Mo. 608; Bassett v. St. Joseph, 53 Mo. 300; Musick v. Dold Packing Co., 58 Mo. App. 322; Brennan v. St. Louis, 92 Mo. 482; Hull v. Kansas City, 54 Mo. 598; Harrison v. Kansas City El. Light Co., 195 Mo. 606.

In Lore v. American Mfg. Co., supra, Judge GANTT, speaking for the court, said: "It must be apparent from what has already been said that the slipping was not the sole cause of the injury. The injury would not and could not have happened but for another cause, to-wit, the insufficient and insecure guard around the gearing, and if plaintiff was in the exercise of ordinary care at the time she accidently slipped, and but for the unsafe guard would not have been hurt, then under the decisions of this court she is entitled to recover." In Harrison v. Kansas City El. Light Co., supra, wherein is reviewed a number of the cases above cited, Judge MARSHALL, who delivered the opinion of the court, said: "Many other cases in this State might be cited illustrative of the rule in reference to concurrent negligence constituting proximate cause, but the foregoing cases are sufficient to demonstrate that if a defendant is negligent and his negligence combines with that of another, or with any other independent intervening cause, he is liable although his negligence without such other independent intervening cause would not have produced the injury."

The case of DeGrazia v. Piccardo (1900), 15 Pa. Superior Ct. 107, is on all-fours with the case at bar, and we will therefore quote liberally therefrom. In that case the plaintiff was employed to work about a machine called a macaroni roller, which machine was ordinarily safe to work about. While engaged at his work, either by his own negligence, or in some way unexplained, his left hand was caught between the rollers and crushed, and his arm being further drawn into

the machine, was also injured. There was evidence tending to show that defendant had provided a rope to be used to stop the engine by which the machine was run, and the negligence of the defendant consisted in furnishing an old and defective rope which broke when an attempt was made to stop the machinery by pulling said rope. In discussing the facts and the legal questions involved the court said:

"It may be, as the defendant's counsel argue, that the defendant was not bound to provide a rope by which the machine at which the plaintiff worked could be quickly stopped. If the plaintiff had accepted service knowing that there was no such provision for his safety, it might well be argued that the injury he received was within the scope of the danger which both parties contemplated as incidental to the employment. But having provided it, there was an implied obligation on the defendant not to aggravate the plaintiff's risk by an omission to keep it in the condition in which under all circumstances the plaintiff had a right to expect that it would be kept. Perhaps if the defendant had removed the rope and the plaintiff had continued in his employment with knowledge of the increased risk, it could be urged that he accepted it; but it cannot be asserted that he accepted the risk of its becoming rotten and unfit for the purpose for which it was obviously intended. The principle has been thus stated: 'If a person undertakes to do an act or discharge a duty by which the conduct of another may properly be regulated and governed, he is bound to perform it in such a manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be properly performed, shall not suffer loss or injury by reason of his negligence.' It is not too much to say that, presumably, the plaintiff entered and remained in the defendant's employment in the faith that this appliance would be kept in reasonably safe condition. The learned trial judge correctly stated the duty of

the defendant and the principle underlying it in the following instruction: 'But the question is, did' this defendant, having adopted this means of stopping the engine, it seeming to be the fact that there was no engineer at the engine continuously, did he, having adopted that means, and thereby certifying that that was a proper means, and 'we will assume for the purposes of this case that it was, exercise due care in seeing that that appliance was kept in order?' There was ample evidence to warrant the submission of this question to the jury, and to sustain their finding that if the rope had been in proper condition the machine could and would have been stopped before the injuries for which they awarded damages were caused.

"This brings us to the question as to the liability of the defendant for the increased or additional injuries sustained by the plaintiff in consequence of the negligently defective condition of the appliance provided for stopping the machinery, assuming that the plaintiff's hand was caught in the rolls without negligence on the part of the defendant. Without entering into a discussion of the perplexing doctrine of proximate cause and its application to this case, we affirm the proposition of the plaintiff's counsel that, under the facts necessarily implied in the verdict, the proximate cause of these additional or increased injuries for which a recovery was permitted was the negligence of the defendant in maintaining an insufficient and unsafe appliance for the stopping of the machine in the event of the occurrence of such an accident, which under the circumstances it was the defendant's duty to know might occur. Although this negligence was not the primary cause of the accident it was the efficient cause of the injuries. Though the plaintiff might have lost the use of his hand by the accident, there was evidence to warrant a finding that he would not have lost the use of his arm if the defendant had exercised due care. It was an accident likely to occur in the use of such a ma-

chine, and although it be conceded that it was not pre-ventable it does not follow that the employer is not responsible for the consequences which were preventable by the exercise of ordinary care on his part.'' On the question of the division and computation of damages, the court said: ''The difficulty in determining at what precise point the negligence of the defendant became the efficient cause, and of drawing the line between the injuries attributable to accident and those attributable to the defendant's negligence, was not so great in the present case as to be an insurmountable objection to the plaintiff's recovery. There was evidence from which the jury could determine this dividing line with reasonable certainty. The difficulty was not greater than in apportioning damages among those severally liable for the proportion of injury caused by the turning of mine water, culm, sawdust or the like in a flowing stream;'' citing Gould v. McKenna, supra, and other Pennsylvania cases.

But defendant's counsel insist that even though the court erred in giving the instructions referred to, the verdict was nevertheless for the right party, as the plaintiff failed to make out a prima-facie case of negligence against the defendant, and the verdict should therefore be allowed to stand.

The burden, of course, was on the plaintiff to establish directly or by just inference, some want of care on the part of the defendant to which plaintiff's injury might fairly and reasonably be traced. ''Negligence, like any ultimate fact in issue, may be established as well by reasonable inferences from other facts as by more direct means of proof.'' [Blanton v. Dold, 109 Mo. 64; Barnowsky v. Helson, 89 Mich. 523.] In the Blanton case, supra, the court said: ''It is sometimes a close question to determine what inferences from facts may reasonably be drawn; but it is enough for our present purpose to say that we are of opinion that where such a machine as this starts into motion, entirely out

of the usual manner of its operation, as shown in the case at bar, its action affords prima-facie evidence of some want of care in its original construction or then condition, calling for explanation from the party responsible therefor.'' In that case is cited with approval the case of Mooney v. Lumber Co., 154 Mass. 407, wherein it was held that the starting, without apparent cause, of the carriage of a sawing machine, when left at rest, with ''the lever locked which was used to start and stop it,'' whereby the plaintiff was injured, constituted evidence to support a finding that there was negligence in the construction or condition of the machine with reference to its reasonable safety.

We think, upon the principle announced in the above cases, the failure of the emergency brake to operate so as to stop the machinery was prima-facie evidence of want of care in its construction or then condition, and that it was for the defendant to rebut such evidence of want of care on its part. But other facts in evidence indicate that defendant was not as careful as it should be in testing this safety appliance, and so discovering its condition before plaintiff was injured by reason of its being out of repair. The employees working at and about the machines were not permitted to test the appliance, and were warned, under penalty of being discharged, not to pull down on the brake bar ''unless some one is caught in the machinery, or in case of severe accident.'' Defendant's foreman, testifying for plaintiff, stated that he generally tested the appliance himself, and that the company had no stated or regular time to test it. ''There was several times when we tested it that it did not work, but we fixed it up, and the last time I tested it it worked all right.'' He further testified that ''before Scheurer was hurt we had tried the automatic brake about every two or three weeks.''

Taking into consideration the object for which this safety appliance was installed, and the increased dan-

ger to which defendant's employees were exposed in the event such appliance was out of repair and inoperative, we think that inspections at intervals of two or three weeks were not as frequent as reasonably necessary. It is the duty of the master to see that proper inspections are made of the machinery, tools and appliances with or about which his servants are at work. "The master must use such reasonable tests to discover defects as ordinary prudence suggests. The amount of care required is measured by the circumstances of each case, depending upon the kind of machinery used, the risks incident to its use, and the hazard of the business in which it is used. Whether the defendant could have discovered the defect in the hand-hold in this case by the exercise of ordinary care, was a question for the jury, and not for the court to determine." [Gutridge v. Railroad, 105 Mo. 520.] In section 3786 of Thompson's work on the Law of Negligence the duty of the master in this respect is thus stated: "The master is not only bound to make a reasonably careful inspection of the premises, tools and appliances which he provides for the use of his servants, when they come into his hands, but he is also bound to repeat such inspections from time to time as often as may be reasonably necessary, having regard to the exigencies and risks of his business, to the end that they shall not be used by his servants after they get out of repair in such a sense as to be dangerous."

In this case, the way of testing the appliance was simply to start the engine and then pull down the brake lever to see if the safety appliance would do its work, and this, we infer from the evidence, could consume but little time. That being true, and considering the danger to which the plaintiff was exposed in the event the appliance was out of order, perhaps it would not be too much to expect such test and inspection to be made every morning. It was for the jury to determine that question, we think there was ample evidence to

warrant the submission of the question of defendant's negligence to the jury.

The plaintiff was earning $1.75 a day at the time he was injured, since which time, according to the evidence, he had not been able to obtain permanent employment. He ran errands for people, and in that way was able to earn a few dollars a week. He held "one job as night watchman, at one dollar a night, for the Baden Laundry, but was laid off." There can be no question that the loss of an arm is a grievous affliction, and particularly so to a workman who has to depend upon the work of his hands for subsistence. There are but few occupations open to him, when thus maimed, and his earning capacity is necessarily greatly impaired.

Under the evidence before us, and the principles of law applicable thereto, we are of opinion that the plaintiff has a prima-facie good case.

For the errors pointed out, the judgment is reversed and the cause remanded for new trial. All concur.