JOHN E. SHIMP, Respondent, v. WOODS-EVERTZ STOVE COMPANY, Appellant.

Springfield Court of Appeals, July 28, 1913.

1. MASTER' AND SERVANT: Master's Superior Knowledge: Servant May Rely on. A servant has a right to rely upon the superior knowledge of the master.

2. ———: Machinery: Repair by Master: Servant May Rely on. Where a master has repaired a machine which the servant has been operating, the servant has a right to assume that he can operate the machine after such repair, by the exercise of ordinary care, without injury to himself.

3. ———: Master's Negligence: Assuming the Risk. A servant never assumes the risks occasioned by the master's negligence.

4. ———: Repairing Machinery: Care Required of Master. In repairing machinery the degree of diligence required of the master should be measured by the circumstances, the kind of machinery, the risks attending its use and the dangers of the business; and it is for the jury guided by these matters, to determine whether or not the master made a proper repair of an alleged defect.

5. ———: Injury to Servant: Unenforced Rules: As Affecting Liability. In an action by a servant against the master for personal injuries, a rule or command of the master, which was never enforced and which was not intended to be complied with, will not prevent the servant from recovering from the master.

6. ———: Defective Machinery: Instructions. In an action by a servant for injuries alleged to have been occasioned by a defective machine, where the evidence showed that the machine was working defectively prior to the accident, that the

superintendent ordered a coemployee to repair same, and that after the repairs, plaintiff employee was injured by the defect while operating the machine, *held*, reversible error to refuse to instruct that if the employee recognized the danger which might result from the defective machine and that after the repairs he realized that it was still working defectively, unless he informed the employer of the continuing defect and the employer did not repair it, there could be no recovery.

7. ——: ——: **Negligent Repair by Master: Contributory Negligence.** If an employer is guilty of negligence in repairing a defective machine, no duty devolves upon the employee to notify the employer of the failure of the machine to operate properly after such repairs.

8. ——: ——: **Servant to Notify Master.** It is the duty of the servant to notify the master of the defective condition of an appliance of which the servant is aware.

9. ——: **Machinery: Repairing Defects: Negligence: Contributory Negligence.** If repairs on a defective machine were not negligently made in the first instance, it is the duty of the servant to notify the master of the failure of the machine to properly operate after the repairs were made.

10. **VICE-PRINCIPAL: Coemploye: Question for Jury.** Whether or not a coemployee is a vice-principal, so that notice to him of the failure of a machine to work properly and safely after repairs was notice to the employer, *held* to be a question for the jury.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby*, Judge.

REVERSED AND REMANDED.

*E. P. Mann* and *Jno. P. McCammon* for appellant.

(1) Plaintiff must show, to recover: First, a defective machine or appliance; second, knowledge of such defective machine or appliance on the part of the master, or the existence of such defective condition for such a time as would create a presumption of such knowledge, and third, a lack of knowledge on the part of plaintiff of such defect. Traner v. Mining Co., 148 S. W. 70; Beach, Contributory Negligence, sec.

140; Schall v. Cole, 107 Pa. St. 1; Week v. Mill Co., 29 Pac. 215; Steinhauser v. Spraul, 127 Mo. 562; Lucey v. Oil Co., 129 Mo. 40; Epperson v. Cable Co., 155 Mo. 346; Glasscock v. Dry Goods Co., 106 Mo. App. 657. (2) On plaintiff's testimony the machine used by him was so obviously dangerous that injury was inevitable as he operated it and in continuing its use he assumed the risk. Holmes v. Brandenbaugh, 172 Mo. 65; Huhn v. Railroad, 92 Mo. 447; Soeder v. Railroad, 100 Mo. 681; Holloran v. Iron Co., 133 Mo. 476. (3) It is the duty of the plaintiff in the operation of the machine to adopt that method of removing sheets which was safe rather than the dangerous method, else he is guilty of contributory negligence. Newport News Co. v. Beaumeister, 47 S. E. 823; Streets Ex'x v. Railroad, 45 S. E. 285; Powers v. Gas & Electric Co., 42 S. E. 296; Larson v. Knapp, Stout & Co., 73 N. W. 992; Whaley v. Coleman, 112 Mo. App. 594; Railroad v. Swift, 72 N. E. 740; Richmond & D. R. Co., v. Bivens, 15 So. 517; Lucey v. Oil Co., 129 Mo. 41; Smith v. Box Co., 193 Mo. 733, 92 S. W. 394; Traner v. Mining Co., 148 S. W. 73. (4) Where a master has promulgated a rule to govern the conduct of employees and a servant with notice violates it and as a result is injured he cannot recover; or if his injuries are the result of disobedience of orders he is guilty of contributory negligence. 2 Bailey Pers. Inj., p. 1369; Mattrass Co. v. Ostergard, 99 N. W. 2295; Crawford v. Railroad, 64 S. E. 590; Stewart v. Carpet Co., 50 S. E. 562.

*George Pepperdine* and *Patterson & Patterson* for respondent.

(1) A master is bound to use reasonable care in furnishing and keeping in repair structures and appliances to be used by the servant. Klebe v. Distilling Co., 207 Mo. 480; Coombs v. Const. Co., 205 Mo.

367; Kremer v. Mfg. Co., 120 Mo. App. 247. (2) Before contributory negligence will defeat recovery for negligence personal injury the danger must be so obvious that an ordinarily prudent man would not assume the situation. Mitchell v. Railroad, 112 S.W. W. 291. (3) The mere fact that plaintiff knew of the defect in the machine and continued to work upon the same does not preclude the right of recovery on the ground that plaintiff was guilty of contributory negligence. Harriman v. Kansas City Star Co., 81 Mo. App. 129; Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Morgan v. Mining Co., 141 S. W. 735; Corby v. Tel. Co., 231 Mo. 417; Jewell v. Bolt & Nut Co., 231 Mo. 176. (4) A servant does not assume risks arising from the negligence of the master. Morgan v. Railroad, 136 Mo. App. 337; King v. Railroad, 143 Mo. App. 279; Kile v. Light & Power Co., 149 Mo. App. 354; Holman v. Iron Co., 152 Mo. App. 672; Trent v. Printing Co., 141 S. W. 437. (5) It is only in a case concerning which reasonably prudent men cannot fairly differ that the court may declare a plaintiff guilty of contributory negligence as a matter of law. Coombs v. Kirksville, 134 Mo. App. 645; Nagel v. Railroad, 75 Mo. 653; Hulin v. Railroad 92 Mo. 440; Carnovski v. Transit Co., 207 Mo. 263; Smith v. Kansas City, 125 Mo. App. 150, 154. (6) While the violation of a known rule of the master made for the employees' safety would usually bar a recovery, yet where such rule is habitually violated, to the knowledge of the employees and the master, or has been violated so frequently and openly, and for such a length of time that the employer could by the use of ordinary care have ascertained its nonobservance, it will be considered waived by the master, and the servant will not be bound thereby. Smith v. Railroad, 61 S. E. 575; Sissel v. Railroad, 214 Mo. 515. (7) Contributory negligence must be pleaded to be available as a defense. Donovan v. Railroad, 89 Mo. 147; Keitel v. Railroad,

28 Mo. App. 657; Kein v. Railroad, 29 Mo. App. 53; Hudson v. Railroad, 101 Mo. 13.

ROBERTSON, P. J.—This is an action to recover damages for an injury received by the plaintiff in the factory of the defendant resulting in the loss of three fingers from his left hand. He recovered in a jury trial a judgment for $2500, from which the defendant has appealed.

The defendant in its answer pleads a general denial and contributory negligence on the part of plaintiff in that he knowingly put his hand in the place of danger where the descending die or plate, referred to in the plaintiff's petition, would crush it when it descended thereon, in permitting his hand to be where the machinery would strike it and in causing the machinery to descend upon his hand by putting his foot upon the pedal by which it is adjusted. Assumption of the risk by the plaintiff is also alleged by the defendant in its answer.

In behalf of the plaintiff the testimony discloses that the defendant was engaged in the business of manufacturing stoves and the plaintiff was what is designated as a "machine man" and sheet metal worker and had been so engaged for five or six years prior to the accident of which complaint is made. In the defendant's factory, run by electricity, were cutting and stamping presses used to cut and shape the parts of a stove. One of these machines had been operated by plaintiff for three or four months prior to the accident. The machine consisted of a lower stationary die head made of iron and steel with the top about three feet above the floor upon which the sheets were laid and upon which descended another die head from above, with about an eight-inch stroke and with sufficient force to cut and press the metal placed thereon in the desired shape. The upward and downward motion of the upper die was manipulated by means of clutches

equipped with a cutout which, when the foot of the operator was pressed on a pedal provided therefor, caused the top die to be placed in motion at the rate of about one stroke each second. When the machine is in proper repair and the foot removed from the pedal, the upper die ceases its operation but for some time prior to the accident the adjustments of the machine at which the plaintiff was working had been defective and the upper die had been at times descending after the foot was taken off the pedal. The superintendent had been notified of this defect and on the morning of the accident the plaintiff made some suggestions about the repair of the machine. The superintendent did not adopt his suggestions but directed one Reynolds to make a different repair. Reynolds and the plaintiff attempted to repair the machine in the manner designated by the superintendent, which the plaintiff told the superintendent would not be effective. This was early in the morning, about nine or ten o'clock. After this attempted repair had been made and the plaintiff had gone back to work again, and while the plaintiff did not have his foot on the pedal, as he testified, the top die dropped without warning. Plaintiff informed Reynolds of this incident but did not say anything to the superintendent, or at least he says he does not remember whether he told the superintendent or not. Plaintiff continued his work with the machine until about four o'clock in the afternoon when the upper die again descended after plaintiff, as he says, had taken his foot off of the pedal, and caught his hand and inflicted the injury complained of in this suit.

It was the custom of all of the employees in the defendant's plant to place these sheets of iron upon the die with their hands. After the upper die had descended and performed its operation the metal remaining thereon was cut of the same dimensions as the die, and the employees used their hands to remove the same.

One operator would turn out between 2500 and 4000 stamped sheets in a·day.

Reynolds testified in behalf of the plaintiff and stated that he attended to the machinery and the electrical appliances; that he had been there three years prior to the accident and that it was his duty to repair the machinery when it got out of repair and if told to do so by the foreman. He also stated that he had known this machine to make improper revolutions and then stop, at times "too numerous to mention." He says that he told the superintendent that the adjustment of the clutches needed a new wheel but that the superintendent told him to make the repair as directed, which was entirely different from the suggestion offered by Reynolds. Other witnesses testified without qualification that Reynolds was the man who had charge of the machine work; that it was his duty to repair these machines when they were out of order, and that he looked after the repairing of the machines. Another witness testified that "Reynolds never did anything without the orders of" the superintendent and that he was under the orders of the superintendent. The superintendent testified in behalf of defendant that Reynolds was "there to fix up anything that the boys made any complaint about" and if he (the superintendent) was not there they made complaint to Reynolds and he fixed it.

The superintendent also testified that early in the day on which plaintiff was injured he went around to where plaintiff was working and told plaintiff to keep his hands out from between the dies in performing his work, but there is no testimony that this was a general order and the jury may properly have believed from the facts and circumstances developed by the testimony that no such order was in fact given, or if it was given that it was not given in good faith or with any intention that it should be adhered to.

At the conclusion of all of the testimony the defendant requested the court to instruct the jury that under the law and the evidence the plaintiff was not entitled to recover, which the court refused.

The court gave two instructions in behalf of the plaintiff, one, which we shall discuss hereafter, to the effect that if the plaintiff was engaged in operating the machine and that the same was so constructed that when in proper condition and repair it was set in motion and the dies thereof caused to come together by the operator placing his foot on the pedal, and so constructed that when in proper condition and repair it would stop when the foot or weight was removed from said pedal; that the defendant had negligently allowed the said machine and that part thereof constituting the cutout or stop to become worn, broken or out of repair so that the same would not operate properly, and that by reason thereof the same had become dangerous and unsafe and that the defendant knew, or by the exercise of reasonable care could have known, of such condition and remedied the same; that the plaintiff was using due care and caution for his own safety and without negligence on his part, and by reason of the defective condition of said machine the upper die descended and caught plaintiff's hand between the dies and injured him, and that the injuries were caused by the negligence of the defendant in allowing the said machine to become worn, broken or out of repair and failing to remedy the same, that then the jury should find for the plaintiff. The other instruction given for the plaintiff was to the effect that under the allegation of contributory negligence set out in the defendant's answer the burden of proof rested upon the defendant and that it must, by a preponderance of the evidence, prove that the plaintiff did not exercise that degree of care which an ordinarily prudent person would have exercised under like circumstances.

The court gave two instructions in behalf of the defendant, one on the question of contributory negligence alleged in its answer and the other on the assumption of the risk.

The defendant requested and was refused eight other instructions, numbered from 2 to 9 inclusive. No. 2 was to the effect that if the superintendent told the plaintiff to keep his fingers from between the dies and that he failed to so do, then the defendant was not liable.  Instruction No. 3 sought to impose on plaintiff the duty of notifying the *superintendent* of the failure of the machinery to properly operate after it was repaired.  Instruction No. 4 is as follows: "You are instructed that if you believe from the evidence that the machine operated by plaintiff was defective and by reason of such defect the die head became liable to descend without pressure upon the pedal which tripped it and that the defendant made such repairs as might have been reasonably expected and designed to correct such defective operation; and that the plaintiff had the experience of several years in the adjustment and operation of said machine and knew and appreciated the danger attending the descent of the die head and independently of the pedal, while he was operating the machine, and that he had equal opportunity with the defendant to discover the defective working of said machine, and if you further find that plaintiff learned it was again working defectively, then you will find the issues for the defendant unless you further find that the plaintiff gave notice to defendant that the machine was again out of repair and defendant did not repair it."  Instruction No. 5 is on the question of the burden of proof, the duty of the plaintiff to exercise due care and caution for his own safety and assumes that the plaintiff failed and neglected to notify the defendant, after the repairs were made, that the machine was not operating properly.  Instruction

No. 6 sought to have the court declare as a matter of law that plaintiff was not justified in removing the stamped sheets from between the dies with his fingers nor in placing his fingers between the said dies and so removing such stamped sheets merely for the reason that he could stamp a greater number of sheets thereby, and that if the plaintiff could have used a wire or stick in the removal of such sheets with greater safety to himself, then the verdict should be for the defendant. Instructions No. 7 and No. 9 cover the same points as contained in instruction No. 4. Instruction No. 8 is a repetition of points covered in the plaintiff's first instruction.

It is clear to us that no error was committed by the trial court in refusing to give the defendant's peremptory instruction at the close of all of the testimony. It cannot be said as a matter of law that the plaintiff was guilty of contributory negligence. There was abundant testimony to the effect that the machine was, on the morning of the day of the accident, defective and had been in such condition for a long time prior thereto and that the defendant undertook to repair it, although not in accordance with the suggestion of either Reynolds or the plaintiff, but the plaintiff had a right to rely upon the superior knowledge of the defendant and had a right to believe that by the exercise of ordinary care that he could operate the machine, after the repair was made, without injury to himself. [Buckner v. Horse & Mule Co., 221 Mo. 700, 709, 120 S. W. 766.] Neither should the court have declared as a matter of law that the plaintiff assumed the risk because there was sufficient testimony to submit to the jury the proposition that the defendant was negligent in its efforts to repair the practically conceded defect, and the servant never assumes the risks occasioned by the negligence of his master. [George v. Railroad, 225 Mo. 364, 406, 125 S. W. 196.]

The degree of diligence and care required of the defendant in its effort to make the repair in this case should be measured by the circumstances disclosed by the evidence, the kind of machinery used, the risks incident to its use and the hazard of the business in which it was used, and with these as a proper guide it was for the jury to determine whether or not the defendant in the first instance made a proper repair of the alleged defect. [Scheurer v. Rubber Co., 227 Mo. 347, 368, 126 S. W. 1037.]

Instruction No. 2 requested upon behalf of the defendant was properly refused for the reason that, as disclosed by the testimony, it was a question upon which the jury should have passed as to whether or not such request was made with any intention on the part of the superintendent, if made at all, that it should be complied with. The testimony discloses beyond question that it was the custom, and had been for years, in that factory to operate the machines in the manner in which plaintiff was operating on the day he was injured and that all of the other employees were operating their machines on that day in the same manner, and there is no testimony that there was any other practical method whereby the plaintiff could have placed and removed the metal sheets. Even if the command which the superintendent claims he gave to the plaintiff to keep his fingers from between the dies could be held to have reached the dignity of a rule, yet a rule which is not enforced nor intended to be complied with has no effect upon the right of the plaintiff to recover. [Barry v. Railroad, 98 Mo. 62, 11 S. W. 308; Rutledge v. Railway, 123 Mo. 121, 133, 24 S. W. 1053, 27 S. W. 327; Francis v. Railroad, 127 Mo. 658, 675, 28 S. W. 842, 30 S. W. 129.]

There was no error committed by the trial court in refusing defendant's instruction No. 3 because it imposed on the plaintiff the duty of notifying the *superintendent* of the defendant of the failure of the ma-

chine to properly operate after it was repaired.   There is a question for the jury to decide in this case before it can be said as a matter of law that it was the duty of the plaintiff to notify the superintendent instead of Reynolds, which will be discussed later.

The refusal of the court to give instruction No. 4 for the defendant in our opinion constitutes reversible error in this case.

There are issues involved in this case that are not involved in an ordinary case in which a plaintiff is injured by reason of the negligence of the defendant to make an original repair and it was error on the part of the trial court to submit the case upon plaintiff's instruction on such a theory.   There is involved in this case the question as to whether or not the defendant in the first instance made a repair which an ordinarily prudent person would have made under the same or similar circumstances, which proposition should have been submitted to the jury by appropriate instructions, and in the second place if it did so make the repair then it should have been submitted to the jury as to whether or not the plaintiff notified the defendant when it became apparent to him that the repair made by the defendant was not effective.   And, further, the proposition should have been submitted to the jury that if defendant was guilty of negligence in making the repair then that no duty devolved on the plaintiff to notify the defendant of the failure of the machine to properly operate thereafter, because the defendant could not be heard to say that it should be notified that its negligent repair did not accomplish the purpose which it must be held as a matter of law it knew when the repair was made would not be accomplished.

Upon the question of the duty of the plaintiff to notify the defendant of the unsuccessfulness of its repair, if not negligently made, we have not been materially aided by the parties to this litigation in their briefs

or arguments except that the defendant cites the case of Glasscock v. Swafford Bros. Dry Goods Co., 106 Mo. App. 657, 80 S. W. 364, in which it is held that it is the duty of the servant to notify the master of the defective condition of an appliance with which he is familiar. This in principle is not different from the situation here involved because in the first place if the master was not negligent in its repair of the machine, then the defect thereafter becoming apparent was in the nature of an original defect and in justice to the defendant, before it should be held responsible in this case, if the plaintiff knew of such defect, notice should have been given by him to the defendant of that fact.

In this case, if the repair was not negligently made in the first instance, we are of the opinion that it was the duty of the plaintiff to have notified defendant of the failure of the machine to properly operate after the repair was made. The plaintiff's duty in this regard was increased as well as was the duty of the defendant in the repair of the machine on account of the hazardous business in which they were engaged. This duty of giving notice by the plaintiff is, as stated, bottomed solely upon the premises that the defendant was not negligent in making the repair and instruction No. 4 requested by the defendant recognized this principle. It is necessary then, if the defendant was not negligent in making the repair, that the plaintiff should have given notice to the defendant of the ineffectiveness of the repair when discovered by him, and it then becomes an issue in this case as to whether or not notice to Reynolds was notice to the defendant. Plaintiff appears to have assumed, as a matter of law, that such notice to Reynolds was sufficient notice to the defendant, and the defendant, on the contrary, by its requested instruction No. 3, appears to have assumed that the notice should have been given to the superintendent and ignores Reynolds.

But if, as a matter of fact, the repair was not negligently made, then it became a question for the jury whether or not Reynolds was a vice principal so that notice to him of the failure of the repair to become effective was notice to the defendant. [Radtke v. Basket & Box Co., 229 Mo. 1, 24, 129 S. W. 508.]

There is a conflict in the testimony as to the extent of the duties of Reynolds. Upon the record it is questionable whether he was an ordinary employee in the plant of the defendant and was called on at the pleasure of the defendant's superintendent to make repairs, or whether his duties in general required his supervision of the machinery and attention to any defect when notified thereof by any employee. If he was placed there with the general duty of looking after and removing any defects coming under his observation of which he might have notice, then it would be the duty of the court, under the authority of the case of Radtke v. Basket & Box Co., supra, to instruct the jury that he was a vice principal and that notice to Reynolds was notice to defendant. In short, as laid down in the Radtke case, supra, it is the duty of the trial court to submit to the jury the various phases developed by the testimony and to tell the jury whether or not a certain state of facts constitutes Reynolds a vice principal.

It cannot be said, in our opinion, as a matter of law, that Reynolds, so far as the notice given to him by the plaintiff is concerned, was a vice principal.

If, as above stated, the jury should find that the repair in the first instance was negligently made, then the question of notice and the question of whether or not Reynolds was a vice principal are eliminated from the case.

For the reason that the plaintiff's first instruction submits the case to the jury on the wrong theory and for failure of the court to give instruction No. 4 re-

quested by the defendant, we hold that reversible error was committed in the trial of the case.

We are of the opinion that there was no error committed in the refusal of any of the instructions other than said instruction numbered four.

For the reasons above assigned the judgment of the trial court is reversed and the cause remanded with directions to the trial court to set aside the judgment in favor of plaintiff and to grant the defendant a new trial. *Sturgis, J.*, concurs. *Farrington, J.*, not sitting.