# Thompson *v.* Louisville & Nashville Railroad Co.

*Action for Damages against Employer, by Administrator of Deceased Employe.*

1. *Liability of employer for injuries to employe; death from concurring or contributory causes; proximate and remote causes.*—In an action by an administrator to recover damages for the injuries which, as alleged, caused the death of his intestate while in the defendant's service (Code, §§ 2590–91), the evidence showed that the immediate cause of death was several grains of corrosive sublimate, which had been left by his attending physician to be used as a wash for his wounds, and which, by mistake, his wife administered to him internally. His attending physicians testified that the wounds were mortal, but that the poison killed him sooner than he would have died from the wounds; while other physicians testified that the wounds were not necessarily fatal, but they accelerated his death from the effect of the poison. *Held,* that a charge instructing the jury that his death must have been caused either by the wounds or by the poison, and could not be the result of both, was erroneous; and that a further charge was erroneous, which instructed the jury that, if he died from the effects of the poison, though the death was accelerated by the injuries which he had received, they must find for the defendant.

2. *Charge as to measure or sufficiency of proof.*—A charge which instructs the jury that, "if the evidence leaves them in doubt and uncertainty as to whether the accident or the poison caused the death

[Thompson v. Louisville & Nashville Railroad Co.]

of plaintiff's intestate, and because of such doubt fails to produce in their minds a proper conviction or satisfaction that his death was. caused by the injuries he received," then they must find for the defendant, exacts too high a measure of proof, and is misleading.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HÉAD.

This action was brought by D. B. Thompson, as the administrator of J. R. Thomas, deceased, to recover damages for personal injuries received by said decedent while in defendant's service, and which, as alleged, caused his death; and was commenced on the 25th February, 1888. The injuries were received on the 22d September, 1887, while said Thomas was engaged in the defendant's service, working as a brakeman on a hand-car, which was under the control of one McPherson; and the accident seems to have been caused by McPherson's attempt to stop the car by using a shingle, or piece of board, the brake being defective, whereby Thomas was precipitated from the car, and run over; and he died on the 7th day afterwards. The principal matter of controversy was, whether his death was caused by the injuries which he had received, or by some poison, several grains of corrosive sublimate, which the attending physician had left to be used as a wash for his wounds, and which his wife, through mistake, administered to him internally; and also as to the concurring or contributory effect of these two causes. The court gave numerous charges to the jury, on request of the defendant, one of which was in these words: "(17.) If the evidence leaves the jury in doubt and uncertainty as to whether the accident or the poison caused the death of plaintiff's intestate, and because of such doubt fails to produce in their minds a proper conviction or satisfaction that his death was caused by the injuries he received when he fell from the car, and not from the poison, then they must find for the defendant." The other charges, or the material parts of them, are stated in the opinion. The charges given, with other matters, are assigned as error.

SMITH & LOWE, and MASON & MARTIN, for appellant, cited 2 Bish. Crim. Law, 639; 1 Hale's P. C. 428; 1 Hawk. P. C. 93; *Railroad Co. v. Burk*, 96 Ind. 350; *Parsons v. State*, 21 Ala. 300; 54 Wisc. 342; *Sauter v. Railroad Co.*, 66 N. Y. 50, or, 23 Amer. Rep. 18; *Ming v. State*, 73 Ala. 1; *Mose v. State*, 36 Ala. 211.

HEWITT, WALKER & PORTER, contra, cited *Tidwell v. State*, 70 Ala. 33; *Railroad Co. v. Jones*, 83 Ala. 376; *Rice v. State*, 8 Miss. 561; *Rex v. Butchell*, 3 C. & P. 629; *Rex v. Spiller*,

32

[Thompson v. Louisville & Nashville Railroad Co.]

5 C. & P. 333; *Reg. v. Bull*, 2 F. & F. 201; 10 Cox, C. C. 486; 12 Cox, C. C. 534; 2 Bish. Crim. Law, §§ 664, 668; Shear. & R. Negligence, § 125; 1 Heisk. 233; *Insurance Co. v. Tweed*, 7 Wall. 44; 94 U. S. 469; 8 Amer. & Eng. R. R. Cases, 59; 62 Penn. St. 353; 71 Ill. 572; 78 N. C. 305; 85 Penn. St. 293; Code, § 4077.

COLEMAN, J.—The suit is brought to recover damages for injuries alleged to have been wrongfully inflicted by the defendant on J. R. Thomas, an employè, on the 22d day of September, 1889, and from which, it is charged, the death of said employè resulted on the 29th September, 1889. The section of the Code, § 2591, under which this suit is brought, provides that the personal representative may sue, if such injury "results" in the death of the servant or employè. The section so often construed by this court provides, that the suit may be brought by the personal representative, to recover damages for the injury, whereby the death was "caused."—Code, § 2589. "Cause" is that which produces an effect. "Result" is the effect of one or more concurrent causes. The same principles of law are alike applicable in either case.

The testimony of skillful physicians tended to show that the injury inflicted was mortal, and the injured party would have died from the effect of the injury "in a short time." There was evidence, also, tending to show that the wounds were not "necessarily mortal." The evidence showed that, by mistake, the wife of the deceased, who was his nurse, gave to him internally four or five grains of corrosive sublimate, which had been left by the physician to be used as a wash, and not to be given internally. It was proven that the poison would have caused the death of a well person, and it was in evidence that the poison was the immediate cause of death. The testimony of the physicians further tended to show the wound was of such a character "that it may have hastened the death", "may have caused him to die sooner from the effects of the corrosive sublimate, than if he had not received the wound"; "that the corrosive sublimate administered to Thomas would have produced death '*quicker*' in a man in Thomas' condition from the wounds received by him, than in a well man."

Among others, the court charged the jury, that under the evidence in this case, the death of plaintiff's intestate must have resulted, either from the injury he received, or from the poison he took; that the injury and the poison can not both be the cause of his death. Further, that his death could not be the result of the injury, and at the same time the result of

[Thompson v. Louisville & Nashville Railroad Co.]

the poison. Further, that if he died from the result of the poison, then they must find for the defendant, although his death was accelerated by reason of the injury received; or if he died sooner from the effects of the poison than he would have died if he had not been injured.

In the case of *Lou. & Nash. R. R. Co. v. Jones*, 83 Ala. 376, the court declared that, although Mrs. Jones had pneumonia, from which she would ultimately have died; yet, if the injury caused by the negligence of the railroad, under the rules above declared, contributed to and hastened her death, the corporation would not be guiltless; "that the railroad would not be exempt from liability for such an injury, unless her death was *solely* the result of bad health." It does not follow that, because a man can not die but once, as contended, that there can not be two or more concurrent, co-operative, and efficient causes to effect the one killing. A person may be killed by "beating and starving." There may be contributing causes.—3 Greenl. Ev. § 141. If, as the testimony tended to show, the injury was mortal, and caused decedent to die "sooner" or "quicker" from the effects of the poison than he would have died had he not been injured, it is difficult to conceive how the poison can be regarded as the "sole" cause of his death at the time it occurred. If he would have lived longer without the injury, than with the injury, the injury necessarily contributed to and accelerated his death, and was a part of "the *causa causans*"—the cause causing death at the time it occurred.

It is not intended by the court to assert the doctrine, that if a party inflict an injury not mortal, and by the intervention of other causes death results, the party inflicting the injury in all cases shall be held responsible for the death. The first cause may or may not be regarded as the proximate cause of a result, according to the facts of the case.—*Bowles v. State*, 58 Ala. 338, and authorities cited; 2 Bishop, § 668; Shear. & Red. Neg., vol. 1, sec. 125; *Ins. Co. v. Tweed*, 7 Wall. 44; *Milwaukie R. R. Co. v. Kelly*, 94 U. S. 469; 49 Amer. Rep. 170; 48 Amer. Rep. 136; 105 U. S. 249; and many others. The court ought not to have charged the jury, as a conclusion of law, that death did not and could not have resulted from both causes, the injury and the poison, in the face of the testimony of the physicians examined as witnesses, to the effect that the death of the decedent was "accelerated" by the injury, or that the injury may have caused him to die "quicker" than he would have died without the injury.

The charges of the court assert the further proposition, that though the injury inflicted was fatal, yet, if before death the

[Thompson v. Louisville & Nashville Railroad Co.]

poison was given, and was sufficient to cause death, and was the immediate cause of death, the poison must be regarded as the proximate cause, and the jury must find for the defendant. To support this charge, the following proposition of law is cited, and many authorities and illustrations of the principle are given : "That if a new force or power intervenes, sufficient of itself to stand as the cause of the misfortune, the other must be considered as too remote." We concede the correctness of the proposition, and its general acceptance, but do not concede its applicability to a case like the present.

When the evidence shows that the result was not the probable or legitimate result of the first cause, and might not have resulted, but for some new, intervening cause, or this is a matter of contest ; in such cases, the intervening cause may be regarded as the proximate cause, and the first as too remote. But we have been cited to no authority, in a suit for the recovery of damages, where it was shown that the "result" was the necessary and inevitable effect of a first cause, and a new, independent force intervened sufficient of itself to produce the effect, and only hastened the result, the first cause was held to be too remote. In such cases, both causes necessarily contribute to the result.

The difference may be illustrated in the well known case of the squib, cited by counsel. If the person who first threw the squib, had thrown it in a place where its explosion would have been harmless, and some one, without reason or excuse, had picked it up, and started it again, with the injurious results that followed its explosion ; this would have presented a case where the new and intervening cause would have been held the proximate cause, and sufficient to stand for the misfortune. A better illustration, and more applicable, is that of the chain, also cited. "An article at the end of a chain may be moved by a force applied at the other end, that force will be the proximate cause."—94 U. S. 474. Suppose the force at the other end is not sufficient to move the article, and a new, independent, intervening force is applied which effects a removal, the new force will be held the proximate cause. But, if the original force itself is sufficient to move the article, and will surely move it, and a new, independent force intervenes, sufficient of itself to move the article, and which in consequence of the first force accelerates or hastens the movement of the article ; the new force does not "solely" or "alone" produce the movement, but the first force is concurrent, and co-operates with the new force, and is a sufficient cause.

If two persons wrongfully block up a street, so that one is injured in attempting to pass, neither of the culpable parties

[Thompson v. Louisville & Nashville Railroad Co.]

can excuse himself, by showing the wrong of the other, for the injury is the natural and proximate result of his own act. Cooley on Torts, p. 79. If a wound is inflicted, not dangerous of itself, and death was evidently occasioned by grossly erroneous treatment, the original author will not be accountable; but, if the wound *was mortal*, the person who inflicted it can not shelter himself under the plea of erroneous treatment. 1 Hale, P. C. 428; 1 East's C. L. 344, § 113; *Parsons v. State*, 21 Ala. 301.

So, in this case, if the injury had not been mortal, the poison would have been regarded as the proximate cause, according to the facts of the case, governed by other principles of law. See *Bowles v. State*, 58 Ala. 338, and authorities cited *supra*. But, if the wound was mortal, the person who inflicted it can not shelter himself under the plea of a new, intervening cause, if it be shown that the injury caused death to happen "sooner" than it would have happened without the injury. "If the original wrong becomes injurious *only* in consequence of some *distinct* wrongful act or omission by another, the injury shall be imputed to the last wrong." "But, if the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person, and does actually result in injury, through the intervention of causes which are not wrongful, the injury shall be referred to the wrongful cause." If damage has resulted directly from concurrent, wrongful acts of two persons, each of these may be counted on as the proximate cause, and the parties held responsible jointly or severally for the injury.—Cooley on Torts, pp. 68, 69, 70, 78.

These several principles of law fully illustrate the distinction to be observed, and the rules to govern in the present case. The principles of law declared in the following cases, carried out to their legitimate conclusions, tend to sustain the views here stated: *Sauter v. N. Y. Centr. R. R. Co.*, 66 N. Y. 50; *TerreHaute & Ind. R. R. Co. v. Buck*, 49 Amer. Rep. 168; *Beauchamp v. Sag. Min. Co.*, 50 Mich. 163; 45 Amer. Rep. 130.

The measure of proof required by the use of the words "any doubt," in charge No. 17, is too high, and although followed by explanatory or qualifying words, the use of the word "proper" in the explanatory clause is misleading. A "reasonable conviction" is what the law requires.—*L. & N. R. R. Co. v. Jones*, 83 Ala. 376; *Wilkinson v. Searcy*, 76 Ala. 182.

Exemplary damages are not recoverable in this action. See *L. & N. R. R. Co. v. Orr*, at this term.

The complaint, as amended, was sufficient.

Reversed and remanded.