April E. RICHARDSON, et al., Plaintiffs,

v.

VOLKSWAGENWERK, A.G., et al., Defendants and Third Party Plaintiffs,

v.

David R. STEPHENSON, Jr., et al., Third Party Defendants.

No. 77–0702–CV–W–1–S–4.

United States District Court, W.D. Missouri, S.D.

April 14, 1982.

Ronald J. Stites, Kansas City, Mo., for plaintiffs.

John M. Kilroy, Shughart, Thomson & Kilroy, Kansas City, Mo., for defendants and third party plaintiffs.

## MEMORANDUM OPINION AND ORDER

RUSSELL G. CLARK, Chief Judge.

Presently pending before this Court are the joint and separate motions of defendants Volkswagenwerk Aktiengesellschaft (VWAG) and Volkswagen of America, Inc. (VWOA) for judgment notwithstanding the verdict or, alternatively, for a new trial. Plaintiffs Terry Richardson and Carolyn Vienage, guardian of Terry's former spouse-April Richardson, brought this tort action seeking damages for injuries which Terry and April Richardson suffered during a two-car collision. Plaintiffs also brought a wrongful death action pursuant to Mo. Stat.Ann. § 537.080 (Vernon's 1953) for the fatal injuries suffered by the Richardsons' two-year old son, Colin, during the same accident. The defendant VWAG manufactures Volkswagen automobiles, and the defendant VWOA imports and distributes them. The defendants David Stephenson, Jr. and Linda Berkovich are the occupants of the other vehicle involved in the collision.

The tragic accident giving rise to this lawsuit occurred during the late evening of September 25, 1975 on State Highway 13 in Polk County, Missouri. This two-lane, concrete highway runs north and south. The rain was heavy that evening resulting in a slick highway and poor visibility. The defendants Stephenson and Berkovich's automobile, a Ford Mustang, was southbound at approximately 45–50 m.p.h. when the rear of the vehicle swerved sideways onto the muddy shoulder of the southbound lane. The Mustang then went into an uncontrolled, counterclockwise slide crossing the center line of the highway and entering the northbound lane. The right rear quarter panel of the Mustang collided essentially "head-on" with the left front of the plaintiffs' Volkswagen Type 18 "Thing" which, prior to the accident, had been traveling in the northbound lane at approximately 45–50 m.p.h. The force of the impact threw the Mustang approximately 30 feet east of the northbound lane where it landed on the embankment and erupted in flames. The Richardsons' Volkswagen remained on the highway. Since jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, Missouri law is controlling. *Erie R.R. v. Tompkins,* 304 U.S. 64, 79, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

Although all of the occupants in both vehicles were injured, the injuries most relevant to the defendants' motions were those sustained by April and Colin Richardson. April Richardson sustained fractures of the ankle, leg, pelvis and nose and suffered a severe head injury resulting in brain damage and paraplegia. She was subsequently adjudicated incompetent by the Probate Court of Greene County, Missouri, and she presently resides in a nursing home. Colin Richardson sustained a fatal blow to his head.

Following the commencement of this suit the plaintiffs' claims against the defendants Stephenson and Berkovich were settled for $100,000. Plaintiffs proceeded against the remaining defendants on a strict liability in tort theory charging that the seats, dash and assist grip installed in the Richardson vehicle were defectively designed, unreasonably dangerous and failed to give the plaintiffs proper protection against the collision described above. *See generally, Polk v. Ford Motor Co.,* 529 F.2d 259 (8th Cir. banc 1976); *Keener v. Dayton Electric Mfg. Co.,* 445 S.W.2d 362 (Mo.1969); *Restatement (Second) of Torts* § 402A (1965).

The trial commenced on November 16, 1981 and concluded on December 16, 1981 at which time the jury, upon completion of its deliberations, returned verdicts in favor of the plaintiffs and against defendants VWAG and VWOA in the following amounts: $750,000 on April Richardson's claim for personal injuries, $50,000 on Terry and April Richardsons' claim for the wrongful death of Colin Richardson, and $150,000 on Terry Richardson's claim for the loss of April Richardson's services. Pursuant to Rules 50 and 59, the defendants now request this Court to set aside those verdicts. Although the jury also returned a verdict in

favor of the defendants and against Terry Richardson on his claim for personal injuries, that finding will not be disturbed or discussed because neither party has challenged the verdict.

*VWAG—Insufficient Service of Process*

■ Defendant VWAG has contended through the course of this lawsuit that this Court did not acquire personal jurisdiction over it by valid service of process under either Missouri or federal law. This Court agrees. Upon the filing of their complaint, plaintiffs directed service upon VWAG through the Missouri Secretary of State under Mo.Stat.Ann. § 351.633 (Vernon's 1966), which authorizes such service upon a foreign corporation committing a tort in Missouri. *See* Rule 4(e). Plaintiffs instructed the Secretary to obtain process over "Volkswagenwerk, A.G., Wolfsburg, Germany" by service upon "Volkswagen of America, Inc., Mr. G. Storbeck, 818 Sylvan Avenue, Englewood Cliffs, New Jersey" as VWAG's "Designated Agent for Service." The Secretary's affidavit reveals that a copy of plaintiffs' complaint was forwarded by registered mail, return receipt requested, on October 5, 1977 to VWOA as designated agent to receive service for the foreign corporation VWAG.

The above service of process on VWAG was insufficient under Missouri law. Section 351.633, under which jurisdiction is asserted against VWAG, prescribes the manner of service and notification to a defendant foreign corporation as follows:

2. In the event that any process, notice, or demand is served on the secretary of state, he shall immediately cause a copy thereof to be forwarded by registered mail, return receipt requested, addressed to the secretary of such corporation at its principal office as the same appears in the records of the secretary of state, or if there is no such address on file, then to the corporation at its office as shown in the official registry of the state of its incorporation and such an address shall be provided by the plaintiff or his attorney.

The Missouri courts have uniformly held that a court does not obtain the power to adjudicate absent literal compliance with all statutory provisions governing process. *State ex rel. Northwest Ark. Produce v. Gaertner,* 573 S.W.2d 391, 396 (Mo.App. 1978); *Ponder v. Aamco Automatic Transmission, Inc.,* 536 S.W.2d 888, 890 (Mo.App. 1976); *State ex rel. Craig v. Grimm,* 542 S.W.2d 335, 337 (Mo.App.1976). For example, in *Sipes v. American Honda Motor Co., Inc.,* 608 S.W.2d 125 (Mo.App.1980), the plaintiff requested the Secretary of State to forward summons under § 351.633 to "Cheng Shin Rubber Industrial Company Ltd. of Taiwan." Reversing a trial court judgment against the defendant, the Missouri Court of Appeals found jurisdiction over the defendant lacking and stated:

The purported service in this case did not comply with the requirements of Section 351.633–2. Contrary to the requirement that the plaintiff or his attorney provide to the secretary of state the address of the defendant corporation "at its office as shown in the official registry of the state of its incorporation," plaintiffs here gave no home office address for the defendant whatsoever. This failure to comply with the statutory requirement is fatal, even if in fact defendant did receive actual notice of the pendency of this suit. . . .

608 S.W.2d at 127. This Court is bound by Missouri law, and since process was not served on VWAG as clearly mandated by Mo.Stat.Ann. § 351.633(2) (Vernon's 1966) and the applicable Missouri case law, plaintiffs purported service of process under that statute is also fatally defective.

As to federal law supporting service of process, plaintiffs rely on dicta contained in *Bollard v. Volkswagenwerke,* 313 F.Supp. 126 (W.D.Mo.1970), which states that service for the purpose of a common law tort action in Missouri can be obtained upon a foreign defendant's domestic agent designated pursuant to the National Traffic and Motor Vehicle Safety Act of 1966 (Act), 15 U.S.C. § 1399(e). The foregoing federal statute provides:

It shall be the duty of every manufacturer offering a motor vehicle or item of motor vehicle equipment for importation into the United States to designate in writing an agent upon whom service of all administrative and judicial processes, notices, orders, decisions and requirements may be made for and on behalf of said manufacturer, and to file such designation with the Secretary [of Transportation] .... Service ... may be made upon said manufacturer by service upon such designated agent for service ... and in default of such designation of such agent, service of process, notice, order requirement or decision in any proceeding before the Secretary or in any judicial proceeding for enforcement of this subchapter or any standards prescribed pursuant to this subchapter may be made by posting such process, notice, order, requirement or decision in the Office of the Secretary [of Transportation].

█ Contrary to plaintiffs' argument, three reasons lead to the conclusion that VWAG's designation of VWOA as an agent under 15 U.S.C. § 1399(e) is limited to service of documents by, of and from the United States Secretary of Transportation. First, the express purpose of the Act is to allow the government to establish and enforce motor vehicle safety standards. 15 U.S.C. §§ 1381, 1392. The Secretary of Transportation can prohibit the importation of substandard vehicles or assess civil penalties for standard violations. 15 U.S.C. §§ 1397, 1398. Subpart (a) of section 1399, Title 15 U.S.C., grants United States district courts jurisdiction to use its injunctive powers to restrain violations of the Act and requires the Secretary of Transportation to "give notice to any person against whom an action for injunctive relief is contemplated and afford him an opportunity to present his views...." Subpart (d) of the same statute gives the district courts nationwide subpoena power, and subpart (e), in establishing a procedure for the Secretary to give the notice required in subpart (a), specifically refers to "service of process, notice, order, requirement or decision in any proceeding before the Secretary or in any judicial proceeding for enforcement of this subchapter...." 15 U.S.C. § 1399 (emphasis supplied). The Act's legislative history and the federal regulations promulgated thereunder coalesce with the plain meaning set forth in 15 U.S.C. § 1399 and convince this Court that the power of the agent appointed under the Act is limited by the scope of the Act itself. 49 C.F.R. § 551.45(c); *Hamilton v. VWAG,* Nos. 81–01–L, 80–594–D (D.N.H. June 10, 1981), *Rubino v. Celeste Motors, Inc.,* No. 72–CV–350 (N.D.N.Y., Oct. 11, 1974) ("Upon reconsideration and after a careful study of the Safety Act and its legislative history, I am convinced ... that the appointment of an agent under § 1399(e) is solely for the purposes of expediting enforcement of the Safety Act and is not a general agency appointment which, in and of itself, would make the acts of VWOA attributable to VWAG"). *See also* 1966–2 U.S.Code Cong. & Adm.News, 89th Cong., 2d Sess., p. 2736.

Second, the record reveals that when VWAG filed its statutorily required designation with the administrator of the National Highway Traffic Safety Administration, it expressly limited VWOA's authority to accept service of process to only those documents relevant to the Act. *See Fields v. Peyer,* 75 Wisc.2d 644, 250 N.W.2d 311 (1977); *Sipes v. American Honda Motor Co., Inc.,* 608 S.W.2d 125, 129 (Mo.App.1980).

█ Third, holding service upon VWAG valid under § 1399 for purposes of Missouri common law tort actions would violate an international treaty. *See United States v. Pink,* 315 U.S. 203, 230–34, 62 S.Ct. 552, 565–67, 86 L.Ed. 796 (1942). The United States became bound by the provisions of the multilateral international convention governing "Service Abroad of Judicial and Extrajudicial Documents" (the Hague Convention) on February 10, 1969. (20 U.S.T. 361–67, T.I.A.S. 6638); *Shoei Kako Co. v. Superior Court,* 33 Cal.App.3d 808, 109 Cal. Rptr. 402 (1973). *See Detenerio v. McGowan,* 510 F.2d 92, 95 (5th Cir.1975); *American Trust Company v. Smyth,* 247 F.2d 149, 153 (9th Cir. 1957) (A convention enjoys the

status of a treaty as 'the supreme Law of the Land'). In ratifying the Hague Convention on June 21, 1979, however, Germany opted, pursuant to Article 21, to reject the use of registered mail as a method of service of process. Instead, Germany required service of process to be performed through its designated "central authority." Since courts cannot interpret a statute so that it violates an international agreement, this Court cannot construe 15 U.S.C. § 1399(e) so as to allow service of process upon a German citizen by registered mail. *Porsche A.G. v. Superior Court,* 123 Cal. App.3d 755, 177 Cal.Rptr. 155 (Cal.Ct.App. 1981).

Finally, this Court's decision that 15 U.S.C. § 1399(e) is not a proper method for service of process in common law actions is supported by the wisdom of other courts which have addressed the same issue. *Utsey v. VWAG,* No. 80–1620–9 (D.S.C.Sept. 18, 1981); *Hamilton v. VWAG,* Nos. 81–01–L, 80–594–D (D.N.H.June 10, 1981); *Pasquale v. Genovese,* 428 A.2d 1126 (Vt.1981); *Sipes v. American Honda Motor Co.,* 608 S.W.2d 125 (Mo.App.1980); *Fields v. Peyer,* 75 Wis.2d 644, 250 N.W.2d 311 (1977); *VWAG v. McCurdy,* 340 So.2d 544 (Fla.App. 1976); *Rubino v. Celeste Motors, Inc.,* No. 72–CV–350 (N.D.N.Y. Oct. 11, 1974).

■ The question remains whether VWOA is merely the alter-ego of VWAG so that service upon VWOA is effective as to VWAG. Plaintiffs have the burden of proving proper service of process once it is contested. As such, plaintiffs must establish the agency of the person or entity receiving process. *Amen v. City of Dearborn,* 532 F.2d 554, 557 (6th Cir.1976). The parent-subsidiary relation alone ordinarily does not establish the necessary agency for making service on one through the other. *Jones v. VWOA,* 82 F.R.D. 334, 335 (E.D. Tenn.1978); 4 Wright & Miller, *Federal Practice and Procedure* § 1104 (1969). The parties seeking to prove proper service must at least show that the parent exercises such a degree of control over the subsidiary that the activities of the subsidiary are the activities of the parent or show that the subsidi-

ary's activities are controlled by the parent to the extent that the subsidiary is only a department of the parent. *Professional Investors Life Insurance Company, Inc. v. Roussel,* 445 F.Supp. 687, 698 (D.Kan.1978); *Stoehr v. American Honda Motor Co., Inc.,* 429 F.Supp. 763, 765 (D.Neb.1977).

■ Defendant VWAG has submitted the affidavit of Robert Cameron showing that VWAG did not exercise such a degree of control over VWOA to make VWOA a department of VWAG or to make the activities of VWOA the activities of VWAG. Plaintiffs, on the other hand, have not submitted evidence showing facts to the contrary, either at trial or by affidavit, and therefore have not met their burden. *Grantham v. Challenge-Cook Bros., Inc.,* 420 F.2d 1182, 1186 (7th Cir.1969). In fact, this Court's sister districts have reviewed this precise issue and found that VWOA is not VWAG's de facto agent for common law service of process. *Utsey v. VWAG,* No. 80–1620–9 (D.S.C. Sept. 18, 1981); *Hamilton v. VWAG,* No. 81–01–L, 80–594–D (D.N.H. June 10, 1981). Accordingly, the judgments rendered in this case against the defendant VWAG must be set aside because of this Court's lack of personal jurisdiction over VWAG.

### The Second Collision Doctrine

■ Plaintiffs predicate their theory of recovery on the principle of strict liability in tort for the defective condition of the Volkswagen's seat, dash and assist grip as applied in the so called "second collision" or "crashworthiness" doctrine. *See generally* Annot. 9 A.L.R. 4th 494 (1981). In *Cryts v. Ford Motor Co.,* 571 S.W.2d 683 (Mo.App. 1978), Missouri adopted the second collision doctrine which extends a manufacturer's scope of liability under the *Restatement (Second) of Torts* § 402A (1965) to situations where the design of its products has caused separate or enhanced injuries in the course of an initial accident brought about by an independent cause. The second collision doctrine differs from the typical strict liability case in that the defect would not have produced any injury in the absence of

a co-defendant's independent act which sets the injury producing cycle into motion. The source of the original independent act is irrelevant so long as the plaintiff's particular use of the product is reasonably foreseeable. *Polk v. Ford Motor Co.,* 529 F.2d 259, 266 (8th Cir.banc 1976); *Cryts v. Ford Motor Co.,* 571 S.W.2d 683, 687 (Mo.App. 1978). In this case, the second collision was the plaintiff's body striking the Volkswagen's alleged defective dash and assist grip following the first "head-on" collision between the Volkswagen and the Ford Mustang. *See generally, Polk v. Ford Motor Co.,* 529 F.2d 259 (8th Cir.banc 1976); *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir.1968).

■ To recover under the second collision doctrine, the plaintiff has the burden of proving that the product was defective in condition or design when it left the manufacturer. To establish that the product was defective, plaintiff must show that he was injured while using the product in its intended manner. Further, the plaintiff must prove that the product was unreasonably dangerous; i.e., the product must be dangerous to an extent beyond that which would be contemplated by the user with ordinary knowledge common to the community. *Keener v. Dayton Electric Mfg. Co.,* 445 S.W.2d 362, 364 (Mo.1969); *Cryts v. Ford Motor Co.,* 571 S.W.2d 683, 688 (Mo. App.1978).

The courts have uniformly held in second collision cases that the plaintiff also bears the burden of proving causation—that the manufacturer's defective product enhanced the injuries sustained in the accident. However, the jurisdictions have split concerning the method of meeting this burden. One group of decisions, the most notable of which is *Huddell v. Levin,* 537 F.2d 726, 737–738 (3rd Cir.1976), requires a plaintiff to prove with specificity those injuries which were caused by the specific defects to make a submissible case. *See Caiazzo v. Volkswagenwerk, A.G.,* 647 F.2d 241, 250–251 (2d Cir.1981); *Stonehocker v. General Motors Corp.,* 587 F.2d 151, 158 (4th Cir. 1978) ("the burden is on the plaintiff either

to establish that he would have suffered no injury or the extent of the injury he would have suffered, had the vehicle been properly designed"); *Jeng v. Witters,* 452 F.Supp. 1349, 1361 (M.D.Pa.1978), *affirmed without opinion,* 591 F.2d 1335 (3rd Cir.1979); *Yetter v. Rajeski,* 364 F.Supp. 105, 109 (D.N.J. 1973). This method ultimately requires a jury to find that the manufacturer's defective product was the sole cause of the plaintiff's additional injuries.

Other jurisdictions have followed orthodox tort principles set forth in *Restatement (Second) of Torts* §§ 433, 433A & 433B (1965) and hold that a plaintiff need not prove the nature and extent of the enhanced injuries˙ but makes a submissible case by offering enough evidence of enhancement to present a jury issue. Defendants are deemed concurrent tortfeasors because their independent acts combine to cause a single injury. Under this theory, plaintiff has the burden of presenting sufficient evidence to prove to the jury that each defendant's act (the original tortfeasor's negligence and the manufacturer's defective product) was a substantial factor in producing the plaintiff's injuries. Should the plaintiff's injuries be indivisible, the defendants are held jointly and severably liable as concurrent tortfeasors for plaintiff's total damage. If reasonable minds could differ on whether the plaintiff's injuries are divisible, the trier of fact determines whether the injury can be reasonably apportioned among the defendants and the extent of each defendant's liability. *Mitchell v. Volkswagenwerk, A.G.,* 669 F.2d 1199 (8th Cir.1982); *Fietzer v. Ford Motor Co.,* 590 F.2d 215, 218 (7th Cir.1978); *Fox v. Ford Motor Co.,* 575 F.2d 774, 787–788 (10th Cir.1978); *Lahocki v. Contee Sand & Gravel Co., Inc.,* 41 Md.App. 579, 398 A.2d 490, 501 (1979).

Although numerous issues command attention, the central question in this case is which of the above methods of proof would the Missouri Supreme Court impose on a plaintiff to establish an automobile manufacturer's liability in the context of second collision litigation. *Polk v. Ford Motor Co.,*

529 F.2d 259, 264 (8th Cir.banc 1976). Reduced to simplicity, the issue is whether a plaintiff must prove that the manufacturer's defective product was the sole factor or a substantial factor in producing the plaintiff's enhanced injuries. Defendant VWOA asserts that Missouri would adopt the *Huddell* burden of proof theory and urges this Court to grant judgment notwithstanding the verdict or a new trial because the plaintiffs did not prove what specific injuries were caused by the alleged design defects (i.e. that the defects were the sole factor causing the plaintiffs' additional injuries). Plaintiffs, on the other hand, contend that they met their burden by presenting evidence sufficient for the jury to find that the defective product was a substantial factor in producing the plaintiffs' enhanced injuries. Having extensively reviewed the Missouri law and the parties' briefs, this Court concludes that several Missouri Supreme Court decisions mandate that a strict liability defendant in a second collision case is to be held jointly and severally liable as a concurrent tortfeasor whenever the jury finds that the defendant's defective product was a substantial factor in producing an indivisible injury to the plaintiff.

The inquiry must begin with two controlling decisions wherein the Missouri Supreme Court conclusively determined the proper law to be applied in this case. In *Glick v. Ballentine Produce Inc.,* 396 S.W.2d 609 (Mo.1965), plaintiffs brought wrongful death actions against the first defendant, whose truck negligently struck the decedent's vehicle causing the decedent to be thrown to the pavement of the highway, and the second defendant, whose vehicle ran over the decedent while he was on the roadway. The second defendant moved to dismiss arguing that it could not be held liable because the plaintiff did not allege that the decedent was alive when the second defendant ran over him. Finding that the plaintiff's petition stated a joint cause of action against both defendants, the Missouri Supreme Court reaffirmed traditional concurrent tortfeasor liability rules deeply engrained in prior Missouri law and embodied in *Restatement (Second) of Torts* §§ 433, 433A and 433B (1965):

The law recognizes that where " 'the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury.' 1 Thompson on Negligence, § 75." *Berryman v. People's Motorbus Co. of St. Louis,* 228 Mo.App. 1032, 54 S.W.2d 747, loc. cit. 749. See also: *Willey v. Fyrogas Co.,* 363 Mo. 406, 251 S.W.2d 635; *Layton v. Palmer,* Mo., 309 S.W.2d 561, 66 A.L.R.2d 1242; *Domitz v. Springfield Bottlers,* 359 Mo. 412, 221 S.W.2d 831; *Brantley v. Couch,* Mo.App., 383 S.W.2d 307. As stated in the last case at loc. cit. 310: " '. . . According to the great weight of authority, where the concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tortfeasor, and the injured person may at his option or election institute suit for the resulting damages against any one or more of such tort-feasors separately, or against any number or all of them jointly. The injured person is not compelled to elect between the tort-feasors in invoking a remedy to obtain compensation. . . .' " In *Willey,* supra, it is pointed out that liability is not defeated by the fact that the negligence of one defendant may precede or follow that of another in point of time. The facts of Berryman, supra, are particularly analogous here. See, also, generally, *Thompson v. Louisville & N.R. Co.,* 91 Ala. 496, 8 So. 406; *Micelli v. Hirsch,* Ohio App., 83 N.E.2d 240.

396 S.W.2d at 612–613. *Accord: Byars v. St. Louis Public Service Co.,* 334 Mo. 278, 66

S.W.2d 894 (1933); *Carr v. St. Louis Auto Supply,* 293 Mo. 562, 239 S.W. 827 (1922); *Scheurer v. Banner Rubber Co.,* 227 Mo. 347, 126 S.W. 1037 (1910).

*Barlow v. Thornhill,* 537 S.W.2d 412 (Mo. banc 1976) is equally dispositive of the issue at hand. There, plaintiff sought damages for singular injuries sustained when two different vehicles rear-ended the plaintiff's car within a period of approximately ten minutes. Plaintiff was unable to determine which accident caused his injuries although several experts testified that both accidents contributed to the injury. At trial, the plaintiff described the first collision as a "light impact" and the second collision as "more severe." 537 S.W.2d at 415. Following a jury verdict against both defendants, the trial court granted judgment notwithstanding the verdict as to the first defendant because the evidence failed to prove that the first defendant's conduct "directly caused or directly contributed to cause injury or damage to plaintiff...." 537 S.W.2d at 416. Reversing the trial court and reinstating the plaintiff's verdict, the Missouri Supreme Court, En Banc, held that the indivisible injury rule enunciated in *Glick v. Ballentine Produce Inc.,* 396 S.W.2d 609 (Mo.1965), operated to render both defendants jointly and severally liable for "all of the injuries sustained in the combined events" and stated:

> [W]hen two or more independently acting persons are consecutively negligent in a closely related period of time and cause injury which the fact trier determines cannot be reasonably apportioned among them, the tortfeasors are jointly and severally liable for all the damages directly and proximately resulting from such negligence.

537 S.W.2d at 415–416, 419–420, 423–424. *Accord, Daniels v. Smith,* 471 S.W.2d 508, 512 (Mo.App.1971); *Daniels v. Dillinger,* 445 S.W.2d 410, 413 (Mo.App.1969).

The facts of *Glick* and *Barlow* are not substantially different from those in the case *sub judice.* Defendant VWOA's defective product is deemed an independent act which operated concurrently and in a close-

ly related period of time with the defendants Stephenson and Berkovich's negligent act to cause broken bones, brain damage and paraplegia to plaintiff April Richardson. *See Carr v. St. Louis Auto Supply,* 293 Mo. 562, 239 S.W. 827 (1922) (concurrent tortfeasor defined). As such, Missouri law requires the jury to find only that defendant VWOA's conduct directly caused or contributed to cause the plaintiff's injuries, and the well-established Missouri test of direct or proximate cause is whether the defendant's conduct was a substantial factor in producing the plaintiff's injuries. MAI 19.01, 25.04 (3d ed. 1981); *Giles v. Moundridge Milling Co.,* 351 Mo. 568, 173 S.W.2d 745, 750 (1943) (When two forces independently operate to bring about harm to another, each defendant's wrongful conduct may be a substantial factor in bringing it about, and when the question is open to a reasonable difference of opinion, it is for the jury); *Cryts v. Ford Motor Co.,* 571 S.W.2d 683, 689 n. 3 (Mo.App.1978). Contrary to the reasoning espoused in *Huddell,* the Missouri courts have expressly refused to require an injured plaintiff to prove, or a jury to find, that a concurrent tortfeasor's conduct was the sole cause of the plaintiff's injuries, indivisible or otherwise. *Caldwell v. St. Louis Public Service Co.,* 275 S.W.2d 288, 293 (Mo.1955); *Deskin v. Brewer,* 590 S.W.2d 392, 399–400 (Mo.App. banc 1979) (Defendant is liable if his conduct is a contributing cause, rather than the sole cause, of the plaintiff's injury). Following the *Huddell* theory and requiring plaintiffs to prove that defendant VWOA's defective product was the sole cause of their additional injuries would also allow the defendants to escape liability by arguing that the injury would not have happened absent the co-defendant's wrongful act; such an argument has been explicitly disapproved by Missouri law. *Neal v. Curtis & Co. Mfg. Co.,* 328 Mo. 389, 41 S.W.2d 543, 556–557 (1931); *Bradley v. Becker,* 321 Mo. 405, 11 S.W.2d 8, 11 (1928).

Several other considerations convince this Court that under Missouri law plaintiff April Richardson met her causation burden in this second collision case with evidence

sufficient for a jury to find that the defendant's defective product directly caused, or was a substantial factor in producing, the plaintiff's total injuries. First, the Missouri Court of Appeals implicitly accepted this theory through the jury instructions given in the second collision decision, *Cryts v. Ford Motor Co.,* 571 S.W.2d 683 (Mo.App. 1978). There, the jury was properly instructed to find for the plaintiff if they believed that the defendant's defective product "directly caused or contributed to cause damage to plaintiff...." 571 S.W.2d at 689, n. 3. Not only is this phrase taken from the Missouri Approved Instruction for joint tortfeasors, but also the phrase "directly caused" is legally equivalent to the term "proximate cause" which the Missouri Supreme Court has defined as a substantial factor which brings about the injuries. *Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 718 (8th Cir.1976) (applying Missouri law); *Ricketts v. Kansas City Stockyards Co.,* 484 S.W.2d 216, 221–222 (Mo. banc 1972); *Giles v. Moundridge Milling Company,* 351 Mo. 568, 173 S.W.2d 745, 750 (1943); *Coates v. Dewoskin,* 379 S.W.2d 146, 148 (Mo.App.1964); see MAI 19.01 (3d ed.1981). Also in *Cryts,* the court cited a Seventh Circuit decision, *Nanda v. Ford Motor Co.,* 509 F.2d 213 (7th Cir.1974), for the following second collision causation rule:

> If there is evidence from which a jury could find that an unreasonably dangerous condition existed and that the defect caused the injury, the evidence is sufficient to support a jury verdict against the manufacturer.

571 S.W.2d at 688. Missouri's reliance on this case gains persuasive significance from the fact that in a subsequent decision, *Fietzer v. Ford Motor Co.,* 590 F.2d 215 (7th Cir.1978), the Seventh Circuit, applying Wisconsin law, held that the test of causation in a second collision case is whether the manufacturer's conduct was a substantial factor in producing the result and stated that "[i]t need not be the sole factor, the primary factor, only 'a substantial factor.'" 590 F.2d at 218. Finally, it is the law of Missouri that a defendant, whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible. *City of Kennett v. Katz Constr. Co.,* 273 Mo. 279, 202 S.W. 558 (1918); *Haggard v. Mid-States Metal Lines, Inc.,* 591 S.W.2d 71, 77 (Mo. App.1979).

 Based on the dispositive Missouri decisions discussed above, this Court concludes that a plaintiff's burden of proof in a second collision-strict liability case should be deemed satisfied against the manufacturer if it is shown that the defective product was a substantial factor, rather than the sole factor, in producing damages over and above those which were probably caused as a result of the original collision. Furthermore, the extent of the manufacturer's liability depends upon whether or not the injuries involved are divisible such that the injuries can be clearly separated and attributed either to the manufacturer or the original tortfeasor. If the manufacturer's conduct is found to be a substantial factor in causing an indivisible injury such as paraplegia, quadraplegia, death, etc., then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants are jointly and severally liable for plaintiff's total injuries. *Mitchell v. Volkswagenwerk, A.G.,* 669 F.2d 1199 (8th Cir.1982); *Barlow v. Thornhill,* 537 S.W.2d 412 (Mo. banc 1976); *Glick v. Ballentine Produce Inc.,* 396 S.W.2d 609 (Mo.1965).

 Also, "whether or not the harm to the plaintiff is capable of apportionment among two or more causes is a question of law." *Mitchell v. Volkswagenwerk, A.G.,* 669 F.2d 1199, pp. 1208–1209 (8th Cir.1982). *See Mathews v. Mills,* 288 Minn. 16, 178 N.W.2d 841, 845 (1970). If the trial court determines that reasonable minds would not differ on the question of apportionment, the court may decide the issue and instruct the jury accordingly. *Restatement (Second) of Torts* § 434 (1965). Should the court believe that reasonable minds could differ, the question of apportionment of the

harm, as well as liability and damages, is to be determined by the trier of fact. *Barlow v. Thornhill,* 537 S.W.2d 412, 419 (Mo. banc 1976); *Restatement (Second) of Torts,* § 434 (1965). In the case *sub judice,* this Court is convinced that April Richardson's brain damage, broken bones and paraplegia were incapable of apportionment as all of these injuries are indivisible as a matter of law. *Mitchell v. Volkswagenwerk,* 669 F.2d 1199, pp. 1203, 1205, 1206 and 1209 (8th Cir.1982) ("If the manufacturer's negligence is found to be a substantial factor in causing an indivisible injury such as paraplegia, death, etc. then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants should be treated as joint and several tortfeasors.").

Plaintiffs tried their entire case on the wrong theory, i.e., that the injuries were divisible. Evidently assuming that the Missouri courts would follow *Huddell* and require a plaintiff to prove that the defendant's defective products were the sole factor in producing the plaintiff's enhanced injuries, plaintiffs proceeded at trial on the theory that the defendants were only liable for those additional injuries caused by the defective products when, in fact, the injuries were not divisible as a matter of law. The jurors were misinformed during plaintiffs' opening statement, closing argument and in the instructions that "[t]he burden was upon the plaintiffs to prove by a preponderance of the evidence what portion of any injury was caused by the alleged design defect *which injury would not have occurred from the collision absent any such defect*" and the verdict directors were worded accordingly. (Emphasis supplied); *see* Instructions No. 4, 8, 9, 12 and 13. Taken as a whole, these instructions directed the jury to allow recovery for those specific injuries which would not have been sustained but for the defective product and, as such, they are sole cause instructions. Under Missouri law, plaintiff's burden was to prove, and the jury's duty was to find, that VWOA's defective product was a substantial factor, rather than the sole factor, in producing the plaintiff's indivisible injuries. The jury's verdict proves that the jury did, in fact, find that the vehicle was defective and that the defect caused some of the injuries. Even though the plaintiffs could have recovered their total damages from defendant VWOA had they argued and instructed on the correct law, plaintiffs have not appealed from the judgments entered in this case nor have they moved for a new trial. The plaintiffs, through their instructions, imposed on themselves a greater burden of proof than was necessary, and under Missouri law, the defendant is in no position to complain. *Joly v. Wippler,* 449 S.W.2d 565, 569 (Mo.1970); *Stewart v. Small,* 5 Mo. 525 (Mo.1839); *Martin v. Oliver,* 603 S.W.2d 674, 675 (Mo.App.1980); *Steele v. St. Louis Mutual Life Ins. Co.,* 3 Mo.App. 207 (1876) (The giving of an instruction which only serves to cast an additional burden on the respondent is harmless error of which the appellant cannot complain.) Turning to the defendant's 124 alleged points of error, the Court will address only those which are not clearly without merit.

*Sufficiency of Evidence*

At the outset, defendant VWOA urges this Court to set aside the three jury verdicts in plaintiffs' favor because the plaintiffs did not make a submissible case as to causation. The standards for ruling a motion for judgment notwithstanding the verdict are well defined. In *Cleverly v. Western Electric Company,* 594 F.2d 638, 641 (8th Cir.1979), the Eighth Circuit held that, for purposes of such a motion, all evidence must be construed in the light most favorable to the nonmoving party; all conflicts in evidence must be resolved in a manner favoring the verdict; all facts which the opposing party's evidence tends to prove must be assumed; and the opposing party must be given the benefit of all reasonable inferences. In the final analysis, the motion may be granted only if reasonable minds could not differ as to the conclusion to be drawn. After careful evaluation in accordance with the Missouri indivisible injury rule outlined above, this Court believes the evidence presented by plain-

tiffs sufficient for the jury to find that the defendant's defective products were a substantial factor in producing April Richardson's injuries. Plaintiffs, however, did not present evidence sufficient to establish that defendant VWOA's wrongful acts were a substantial factor in causing fatal injuries to Colin Richardson, and accordingly, the jury's wrongful death verdict against that defendant must be set aside.

■ Applying the *Cleverly* test, the Court finds the evidence sufficient to submit both April Richardson's claim for injuries and Terry Richardson's claim for loss of services to the jury. Experts testified regarding particular defects in the Volkswagen vehicle, the deformation and energy absorbing capabilities of the particular defects, the defects' role in producing additional injuries to April Richardson in the collision, the degree to which those defects increased the deceleration and the mechanical forces transmitted to the plaintiff's body, the movement of the plaintiff's body during the collision, the degree to which feasible alternative designs would have reduced those forces, and the medical consistency between April Richardson's injuries and her impacting the defective dash and assist grip. The evidence was also sufficient for the jury to find that April Richardson was physically incapable of performing any task normally associated with married life prior to the Richardson's dissolution of marriage which occurred some two years following the accident. Based on this evidence, the defendant's motions for judgment notwithstanding the verdict as to April Richardson's claim for personal injuries and Terry Richardson's claim for loss of April Richardson's services must be denied.

■ Under the Missouri Wrongful Death Statute, however, plaintiffs failed to meet their burden of showing the causal connection between the defendant's defective products and the death of Colin Richardson. *Hawkins v. Whittenberg,* 587 S.W.2d 358, 361 (Mo.App.1979); *Shelton v. Bruner,* 449 S.W.2d 673, 679–680 (Mo.App. 1969); *see* MAI 20.01 (3d ed. 1981). The test as to causal connection is whether the

facts show that absent the alleged wrongful act the fatal injury would not have been sustained, and if the evidence leaves the element of causal connection "in the nebulous twilight of speculation, conjecture and surmise," plaintiffs have not met their burden. *James v. Sunshine Biscuits, Inc.,* 402 S.W.2d 364, 375 (Mo.1966); *Shelton v. Bruner,* 449 S.W.2d at 680. Causation may be proved by circumstantial evidence, and it is sufficient if the facts proved are of such a nature and are so connected and related to each other that the existence of a causal connection may be reasonably inferred. *George v. Howard Construction Co.,* 604 S.W.2d 685, 692 (Mo.App.1980). However, if the facts of the case are such that no lay person would be expected to know the cause of death or if the reasonable inference derived from the facts is that the fatal injuries were caused by something other than the defendant's alleged wrongful acts, "an expert is necessary and he must be reasonably certain or no substantial evidence is offered on the issue of causation." *James v. Sunshine Biscuits, Inc.,* 402 S.W.2d at 371–372 (Mo.1966).

In the case at bar, the only reasonable inference which the jury could draw from the facts was that Colin Richardson's death was caused by the negligence of the defendants Stephenson and Berkovich since their acts caused a 50 m.p.h. "head-on" collision. *See, Dreisonstok v. Volkswagenwerk, A.G.,* 489 F.2d 1066, 1076 (4th Cir.1974) (Any "head-on" collision at a speed of 40 m.p.h. or more will result in severe injuries to the occupants of a vehicle as the mean velocity for fatalities is only 33 m.p.h.); U.S. Dept. of Transportation, *Passive Protection at 50 Miles Per Hour* (1972). In this situation, it was incumbent on the plaintiffs to provide some form of evidence that defendant VWOA's defective products were a substantial factor in producing the fatal injuries in order for plaintiffs to make a submissible wrongful death case on the vital issue of causation. *Fox v. Ford Motor Co.,* 575 F.2d 774, 787–788 (10th Cir.1978) (In wrongful death action premised on second collision doctrine, the jury must find that the manu-

facturer's defect proximately caused the death in order for plaintiff to recover). In this regard, the plaintiffs failed. At trial, plaintiffs' expert, Dr. James H. McElhaney, testified, on direct examination by the plaintiffs, that he could not say whether the defendant's design defects "would make the difference between whether [Colin] lived or didn't live." (Tr. 2169). The record contains no evidence whatsoever from which the jury could find that the defective products, rather than the violent collision, were a substantial factor in producing the death. Since the plaintiffs did not meet their burden of proof under Missouri law concerning defendant VWOA's liability for the wrongful death of Colin Richardson, this Court must grant the defendant's motion for judgment notwithstanding the verdict as to that claim.

■■■ Defendant VWOA has also moved, in the alternative, for a new trial as to the three jury verdicts in accordance with Rule 50(c). A motion for new trial is addressed directly to the discretion of the trial court. In considering such a motion the Court is not limited to viewing the evidence in the light most favorable to the prevailing party but may weigh evidence, disbelieve witnesses, and may grant a new trial even when substantial evidence exists to sustain the verdict. *Slatton v. Martin K. Eby Construction Co., Inc.,* 506 F.2d 505, 508 (8th Cir.1974). Having considered carefully all the facts in evidence presented in this case, including testimony that Colin Richardson was not belted and was sitting in April Richardson's lap in the right front passenger seat when the Ford Mustang crossed the center line and struck the Richardson's vehicle "head-on" at approximately 45–50 m.p.h., the Court finds the verdict rendered by the jury on plaintiffs' wrongful death claim to be against the weight of credible causation evidence presented. Furthermore, plaintiffs' verdict directing instruction number ten contained error prejudicial to the defendant by directing the jury to find that the defendant's defective products caused injuries which "resulted in the death of Colin Richardson" when, as stated above, there was no evidence presented to

support a jury finding that the defendant's defective products were a substantial factor in producing the death. *Gathright v. Pendegraft,* 433 S.W.2d 299, 313 (Mo.1968) (An instruction should not be given unless based on substantial evidence). Accordingly, a new trial will be granted in the alternative as to the plaintiffs' claim for the wrongful death of Colin Richardson. Defendants' alternative motion for a new trial as to April Richardson's claim for personal injuries will be denied because the jury verdict is supported by the substantial and credible evidence described above.

*Excessiveness*

■■ Defendant next argues that a new trial should be granted because the jury verdicts of $750,000 on April Richardson's claim for personal injuries and $150,000 on Terry Richardson's claim for the loss of services of his prior wife, April, are grossly excessive. In a diversity action, "the standard of review with respect to a motion for a new trial on the basis of excessive damages is determined by federal law." *Nodak Oil Company v. Mobil Oil Corp.,* 533 F.2d 401, 410 (8th Cir.1976). Under federal law, "[i]f the verdict is to be overturned because of its size, it must be so large as to shock the judicial conscience." *Flanigan v. Burlington Northern Inc.,* 632 F.2d 880, 884 (8th Cir.1980). And the decision whether a verdict is so excessive that a new trial, rather than a remittitur, should be granted is within the discretion of the trial court. *DeWitt v. Brown,* No. 80–1950 (8th Cir. Aug. 14, 1981); *see* 11 Wright & Miller, *Federal Practice and Procedure: Civil,* § 2818 (1973).

While the federal standard of review is applicable, under federal law this Court must also "look to the forum state's case law for guidance on the question of excessiveness." *DeWitt v. Brown,* No. 80–1950 (8th Cir. Aug. 14, 1981). The result that would be reached under the law of Missouri is one factor to be considered by this Court in determining whether the jury verdict is excessive. *Nodak Oil Company v. Mobil Oil Corp.,* 533 F.2d at 411; *Novak v. Gramm,*

469 F.2d 430, 434–435 (8th Cir.1972). In *Worley v. Tucker Nevils, Inc.,* 503 S.W.2d 417 (Mo. banc 1973), the Missouri Supreme Court set forth a two-prong test governing excessive verdicts:

> There are two types of attacks that are made upon verdicts alleged to be excessive. One is that the verdict is so grossly excessive as to indicate bias and prejudice on the part of the jury. If such a contention is found to be meritorious the verdict cannot stand in any amount and a new trial must be ordered. The other type of attack is that the verdict is merely excessive. 'A verdict which is excessive is one in which the jury made an honest mistake in weighing the evidence as to the nature and extent of the injury and in fixing the damages and awarded a sum disproportionate to the amounts usually awarded for comparable injuries under the rule of uniformity.'

503 S.W.2d at 423 (citations omitted).

■ The jury's verdict for $750,000 on April Richardson's action for injuries is not excessive. The evidence at trial was that April Richardson, approximately 28 years of age at the time of the accident, sustained fractures of the ankle, leg, pelvis and nose and suffered a severe head injury resulting in brain damage. Permanent partial paralysis of the left upper and lower extremities and spasticity remain. She has been adjudicated incompetent by the Probate Court of Greene County, Missouri, and she presently resides in a nursing home. As previously set forth, the case was submitted for damages for enhanced injuries only. Plaintiffs' expert, Dr. James H. McElhaney, testified that in his opinion the defects in the automobile increased or enhanced April Richardson's injuries 45–50 percent. Experts testified during the trial that her total economic loss was $1,046,167 (past medical expenses $66,676; future medical expenses-net present value $342,633; and future lost income-net present value $636,856). Assuming that the jury found that April Richardson's injuries were enhanced by 45–50 percent, their verdict would be surprisingly uniform with the amount approved in *Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 722 (8th Cir.1976) (applying Missouri law). In *Morrow* the court extensively reviewed cases from Missouri and other jurisdictions and held that a damage award of $1,813,000 for an individual who sustained severe brain damage, partial paralysis of the left side, spasticity, balance and speech problems, and who had a normal additional life expectancy of 56 years, was not excessive. Applying the Missouri rule of uniformity, and comparing the verdict in this case with that approved in *Morrow* the Court concludes that the damage award of $750,000 plus any portion of the $100,000 proceeds from the settlement with defendants Stephenson and Berkovich for April Richardson's extensive injuries is not excessive.

■ Under either the federal law or the law of Missouri, the evidence, viewed in the light most favorable to plaintiff Terry Richardson, is insufficient to support a loss of services jury verdict in the amount of $150,-000. There was evidence at trial that April, due to the severity of her injuries, was physically incapable of performing any task normally associated with married life. There was also evidence, however, that during this period Terry Richardson was seeing another woman and would leave his incapacitated wife unattended on weekends. It is not disputed that April Richardson divorced Terry approximately two years following the accident, and Terry Richardson remarried approximately thirty days after the divorce became final.

■ Under Missouri law, a spouse's consortium action is for the loss of the injured spouse's support, companionship, society and felicity, all welded into a conceptualistic unity. *Helming v. Dulle,* 441 S.W.2d 350, 354 (Mo.1969). It is axiomatic, however, that the amount and extent of consortium damages are limited by the term of the marriage, and where the husband and wife have dissolved a marriage prior to trial, no damages can accrue following the date of dissolution; future consortium damages are simply not recoverable following a divorce. *Hodges v. Johnson,* 417 S.W.2d 685, 693 (Mo.App.1967) (There must

be some reasonable relationship between the size of the consortium verdict awarded and the extent of the spouse's injuries so that each will be congruent with particular facts and circumstances involved.) Prior to the jury's deliberation, the Court gave the following instruction on consortium damages:

> If you find in favor of plaintiff Terry Richardson on his claim for injury *to his wife April Richardson,* then you must award plaintiff Terry Richardson such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained as a direct result of the enhanced injury to April Richardson.

Instruction No. 13 (emphasis supplied). This instruction did not limit the amount of damages suffered by Terry Richardson to the termination of the marriage following the accident. While this Court is of the opinion that the verdict in the amount of $150,000 is so excessive that it cannot be cured by remittitur, the Court is of the further opinion that it was not the result of bias and prejudice on the part of the jury. During this five-week trial, the Court closely observed the jury and each member was extremely attentive, diligent and dedicated. Being less than half the amount awarded in *Morrow* for almost identical injuries, the Court finds that the verdict returned in favor of April Richardson was reasonable and had the plaintiffs made a submissible case on their wrongful death claim for the death of Colin Richardson, the Court believes that the $50,000 verdict returned by the jury would have been reasonable. The verdicts returned for April Richardson and on the wrongful death claim of Colin Richardson lend further support for this Court to find that the verdict returned in favor of Terry Richardson for the loss of consortium of his wife April was not the result of bias and prejudice but was the result of a mistake, the mistake being the jury's failure to limit Terry Richardson's damages to the termination of the marriage. The Court is convinced that had the jury been properly instructed, their verdict on the claim for loss of consortium would have been sub-

stantially less than $150,000. For the reasons stated above, the defendant's motion for a new trial on Terry Richardson's claim for the loss of April Richardson's services will be granted on the issue of damages only.

*Defendants Stephenson and Berkovich's Motion to Dismiss*

 Finally, defendants Stephenson and Berkovich have moved to dismiss defendant VWOA's third party complaint for contribution arguing that they are not liable for the additional injuries which plaintiffs prove were solely caused by defendant VWOA's defective products. As previously stated, there is no question that April Richardson's brain damage, paraplegia and broken bones are indivisible injuries as a matter of law. *Mitchell v. Volkswagenwerk, A.G.,* 669 F.2d 1199, pp. 1203, 1205, 1206 and 1209 (8th Cir.1982). As such, defendants Stephenson and Berkovich's motion must be denied because, under Missouri law, all the defendants are jointly liable for the plaintiffs' total injuries, and since joint liability exists between the defendants, defendant VWOA has a right to relative fault contribution. *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978).

For the reasons stated in this memorandum opinion, it is hereby

ORDERED that the defendant VWAG's separate motions to dismiss and for judgment notwithstanding the verdicts for lack of personal jurisdiction are granted; and it is further

ORDERED that the defendant VWOA's motions for judgment notwithstanding the verdict and, in the alternative, for a new trial as to April Richardson's claim for personal injuries are denied; and it is further

ORDERED that the defendant VWOA's motion for judgment notwithstanding the verdict as to Terry and April Richardson's claim for the wrongful death of Colin Richardson is granted; and it is further

ORDERED that the defendant VWOA's alternative motion for a new trial as to

Terry and April Richardsons' claim for the wrongful death of Colin Richardson is granted; and it is further

ORDERED that the defendant VWOA's motion for judgment notwithstanding the verdict as to Terry Richardson's claim for the loss of April Richardson's services is denied; and it is further

ORDERED that the defendant VWOA's alternative motion for a new trial as to Terry Richardson's claim for the loss of April Richardson's services is granted on the issue of damages; and it is further

ORDERED that the defendants Stephenson and Berkovich's motion to dismiss defendant VWOA's third party complaint is denied.